**RUPPLE v. KUHL, Collector of Internal Revenue.**

Civil Action No. 4421.

United States District Court
E. D. Wisconsin.
May 17, 1948.

Matthew M. Wallrich, of Shawano, Wis., and John S. Best and Daniel K. Hopkinson, both of Milwaukee, Wis., for plaintiff.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Theron Lamar Candle, Asst. Atty. Gen., and Andrew O. Sharpe and Maurice Wolk, Sp. Assts. to Atty. Gen., for defendant.

DUFFY, District Judge.

The plaintiff brings this suit to recover an alleged overpayment of 1941 income taxes in the sum of $19,207.32. The issues were tried to the court on evidence which is practically free from dispute.

At the times in question the plaintiff was a resident of Shawano, Wisconsin, and employed as the General Manager of the Consolidated Badger Cooperative of that city. Anna K. Rupple, plaintiff's wife, was married to him in 1924.

For several years prior to and during 1941 Carl and Clarence Sturm were two of four members of the partnership of A. Sturm & Sons of Manawa, Wisconsin, engaged in the business of packing and shipping shell eggs. During August, 1941, the Sturms learned that the government was in the market to purchase dried eggs in an amount exceeding several times the then existing productive capacity of the country. They became interested and active in promoting an enterprise for the production and sale of that product. Among other things they located an idle plant at Oconto formerly used for the production of powdered milk. Having had twenty years' previous acquaintance with the plaintiff, they called on him and discussed the project. They particularly sought the plaintiff's opinion as to the suitability of the idle plant for the production of dried eggs in conformity with government specifications.

The plaintiff, in the light of previous experience, advised the Sturms that while the plant would probably serve the purpose, it would nevertheless be prudent to conduct experiments. Possession of the plant for this purpose, he told them, could be obtained by securing an option on the plant. As the Sturms were agreeable to the program suggested by the plaintiff, it was arranged that he proceed to carry it out.

Negotiations ensued between the plaintiff and the St. Paul Bank for Cooperatives, the owner of the idle plant. On August 20 plaintiff obtained a sixty day option to purchase the same for $20,000. The plaintiff advanced $500 as the consideration for the option. It was understood, however, that this amount would be applied in part payment in case the option should be exercised.

Following the securing of the option, the contemplated experiments were immediately undertaken and continuously run until September 5th or 6th. They were in charge of and handled by W. E. Mitton, superintendent and chief engineer of plaintiff's employer. The plaintiff was present at and observed only three or four one-hour experiments. The results disclosed by the experiments were such that it was determined by the plaintiff and the Sturms that the plant was suitable for the intended purpose.

A meeting between the plaintiff and the Sturms was held at Manawa about September 10. Frank Stone of Minneapolis, who had previous experience in the production and sale of dried eggs, was invited and was present. At this meeting it was decided to acquire the plant at Oconto and to utilize it for the production of dried eggs. It was further decided that a partnership, to be known as Wisconsin Dried Egg Company, be established with a capital of $21,000 to be contributed, a third each, by the plaintiff, A. Sturm and Sons, and Frank Stone. At this meeting the plaintiff disclosed that under agreement with his wife she would be a half owner of the one-third interest in the Egg Company. The Sturms advised the plaintiff that they desired to confine business dealings to the plaintiff, but had no objection to the "partnership" between the plaintiff and his wife in his share. At the time the plaintiff did not possess the means or credit to raise or make the required one-third contribution to the capital of the partnership. He had on several occasions discussed the investment opportunity presented both with his wife and the cashier of the Shawano National Bank. Finally, it was agreed

between the plaintiff and his wife that if she should provide the cash capital of $7,000 to cover a one-third interest in the Egg Company, she would acquire and be vested with one-half of the one-third interest with a corresponding share of gains and responsibility for losses.

In furtherance of this agreement between the plaintiff and his wife a loan of $6,500 was negotiated with the bank on the security of her beneficial interest under matured insurance policies on the life of her deceased first husband. Payment by Mrs. Rupple to plaintiff of the remaining $500 was deferred to await future developments and convenience.

The note evidencing the loan from the bank was signed by both the plaintiff and his wife. The loan, however, was made to her personally and was accordingly carried on the bank's records. Payments on the principal of the note were made by the plaintiff's wife.

The proceeds of the loan were deposited in the plaintiff's checking account and checked out by him to the new partnership. Such proceeds covered the balance of the $7,000 for the one-third interest, since credit was allowed for the $500 advanced for the option to purchase the Oconto plant.

Among first steps taken was the affirmative exercise of the option to purchase the plant, which was consummated by the payment of an additional $4,500 cash and the giving of a purchase money mortgage of $15,000.

Operations at the plant were undertaken without delay. Commercial production commenced at the end of September with Clarence Sturm in active charge. He has continued to serve in that capacity. Special compensation has been paid for his managership. The plaintiff has always continued in his full time employment with the Cooperative at Shawano. During the first month of commercial egg-drying operations at Oconto he visited the plant there about twice a week; thereafter, his visits have averaged once a week. No part of the income of the Egg Company appears to be attributable to services rendered by the plaintiff.

On October 8, shortly after the commencement of commercial production, a formal partnership agreement was executed by the plaintiff, Frank Stone and A. Sturm and Sons. This agreement does not mention the name of Mrs. Rupple. As pointed out, the plaintiff had previously disclosed to the other partners that he and Mrs. Rupple were equal owners of the one-third partnership interest. The agreement recites the previous payment for the three one-third interests had been made at $7,000 each.

The partnership was highly profitable and successful from the beginning. One-third of the partnership's net income to the end of 1941 amounted to $64,392. On March 14, 1942, the plaintiff reported this entire amount as gross income on his personal income tax return, which is dated March 14, 1942. He prepared his return with assistance from Arthur Gast, controller of Consolidated Badger Cooperative, and at the time raised the question whether or not he was correct in so treating this item in view of the agreement between himself and wife. Gast advised him that the one-third net income should be equally divided between himself and wife and separately reported by them in their respective returns. Plaintiff did not follow this advice because he wished to consult an attorney with respect to the tax treatment of the income in question. He understood at the time that he could effect any necessary correction and adjustment by filing a claim for refund. The plaintiff was subsequently advised by his attorney that the income in question was subject to equal division and tax accountability between himself and wife.

The plaintiff paid the taxes disclosed upon his 1941 return and within the time prescribed filed a claim for refund in the amount sued for herein. His wife, joining in his claim for refund, offered to pay the taxes on one-half of such income and to extend, if requested, the period of limitation upon the assessment and collection of such taxes.

For the year 1942 plaintiff's income tax return included one-sixth of the net income of the Egg Company as did the return of

his wife for the same year. The plaintiff and his wife also filed a 1942 return covering their agreement relating to their respective interests in the one-third interest in the Egg Company.

On December 20, 1941, the Egg Company paid $1,000 to the plaintiff. This sum, in which his wife had a one-half interest, was retained by the plaintiff, thus completing the payment of the full $7,000 "originating with" or proceeding from her.

During 1942, at various times up to December 23, the Egg Company paid the plaintiff a total of $39,500. State and federal income taxes paid by him during that year add up to $39,536.52. On December 23 of that year he received an additional $1,000 from the Egg Company, which he retained and applied to the extent of his wife's interest therein to balance mutual accounts with respect to other moneys due him from her.

The issue for decision is whether the plaintiff is taxable on one-third of the 1941 net income of the Egg Company, or for only one-sixth thereof.

The actual making and performance in good faith of the agreement between the plaintiff and his wife is free from doubt. Mrs. Rupple's investment in the new enterprise of funds which originated with her effected a real and substantial change in her economic position. Helvering v. Clifford, 309 U.S. 331, 336, 60 S.Ct. 554, 84 L.Ed. 788. While not of decisive importance it is, nevertheless, the fact that the existence of their respective interests under their agreement was communicated to the Sturms and Frank Stone before the new partnership commenced business operations, and her payment of $6,500 (the balance necessary to make up full payment of the capital contribution for the plaintiff's and his wife's one-third interest) was made and accepted on that basis. The communication of this knowledge and payment of the $6,500 preceded by more than a week the execution of the formal partnership agreement on October 8, 1941. In the intervening period nothing transpired to effect any change in the agreement between the plaintiff and his wife as to the one-third interest. At no subsequent time was any change made in any of its terms.

The following provisions of the Internal Revenue Code are involved:

"Sec. 181. Partnership not taxable

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." 26 U.S.C.A. § 181.

"Sec. 182. Tax of partners

"In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\* \* \* \* \* \*

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)." 26 U.S.C.A. § 182.

"Sec. 3797. Definitions.

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \*

"(2) Partnership and partner. The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization." 26 U.S.C.A. § 3797.

Although Mrs. Rupple did not become a member of the Egg Company partnership, it is quite clear that she and her husband became members of a joint venture. This agreement was confined to a single business undertaking and a joint venture was established. Tompkins v. Commissioner, 4 Cir., 97 F.2d 396, 399. From the standpoint of tax liability the result is the same as though they were partners in the Egg Company as such. 26 U.S.C.A. §§ 181, 182, 3797. The statutes accord a joint venture the same tax treatment as a partnership, each member being required to pay taxes on his "distributive share of the ordinary net income" thereof, irrespective whether "distribution is made." Such "distributive share" of the members of the joint venture in question is derived from one-third of the net income of the Egg

Company. As the statutes recognize in express terms a joint venture for tax purposes, no reason is suggested or perceived why a joint venture may not exist where the property involved is a share of a partnership. The statutes provide no limitation whatever as to the property interests which may be the capital of a joint venture so long as it is a "business, financial operation, or venture." °

■ It is thus the legislative command that tax treatment must be given with reference to the interests of members of a joint venture where and as they exist. If so established, they must be recognized without restriction, qualification or limitation. Joint ventures, like partnerships, in order to be entitled to recognition, must be real and genuine within the meaning of the tax laws. Joint ventures and partnerships are identified and associated together in such laws and accordingly must qualify under the same tests as to reality and genuineness.

■ Those tests, as applicable here, are set forth in Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135, as follows: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A.Int.Rev.Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or limited partner with her husband. * * *"

In Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, decided at the same time, the court, aside from a discussion of facts, merely referred to and applied its reasoning in the Tower case, supra.

As the court's language plainly states, any one or all of the tests, if established, is sufficient to warrant recognition of a wife for tax purposes as a partner (or member of a joint venture) along with her husband. The Tower opinion itself cites earlier Tax Court cases to that effect. A later decision of that court to the same effect is S. M. Boozer v. Commissioner, 9 T.C. 1215. Weizer v. Commissioner, 6 Cir., 1948, 165 F.2d 772, 775, is also in point.

One of such tests, that of a wife's investment of "capital originating with her," is of itself a sufficient basis for recognition of a joint venture between herself and husband for tax purposes, and is fully established in the case at bar. Of the capital invested in the joint venture, $6,500 was borrowed by her from a bank solely on the strength of the pledge by her of collateral security belonging exclusively to her. She borrowed the full amount then required, made it immediately available, and caused it to be paid over to the Egg Company. It is of no significance that the amount was paid to the Egg Company through the plaintiff. And there is here no significance to be attached to the plaintiff's signing the note with his wife, or that the plaintiff opened and conducted preliminary negotiations with the bank in the hope of obtaining the loan personally. The controlling fact remains that the loan was subsequently consummated and closed only by reason of the participation of Mrs. Rupple and on her security. As far as the joint venture is concerned the capital of $6,500 was contributed by and originated with Mrs. Rupple with the result that the joint venture between herself and husband was established and exists for tax purposes.

But the "capital originating with" Mrs. Rupple did not stop with the $6,500 raised and provided by her. An additional $500 was included in such "capital," which, in connection with and under the joint venture agreement, Mrs. Rupple agreed to pay her husband to cover the amount which he had advanced at the outset for the option for the then idle plant at Oconto. That the time and occasion for the payment of this amount was to await future developments and mutual convenience is not an unusual arrangement in money transactions between wife and husband. Legally, it imports payment within a reasonable time. Payment by Mrs. Rupple of this item was effected during the following December; at that

time the plaintiff applied the $500 belonging to Mrs. Rupple out of $1,000 received from the Egg Company. Aside from representing additional "capital originating with her" to cover balance payable by her in establishing the joint venture, it represents at the same time positive, confirmatory evidence of the actual and real existence of the joint venture.

 Accordingly, with the joint venture so established the plaintiff and Mrs. Rupple each has tax liability with respect to one-half of one-third of the Egg Company's 1941 net income. No particular emphasis need be laid on the fact (in some other cases of great significance) that the husband and wife joint venture was new and was established coincidentally with the very inception of the Egg Company. And the conclusion reached is not impaired or affected by the fact that Mrs. Rupple, as a member of the joint venture, was not a member of the Egg Company partnership, or named as such in the formal partnership agreement. R. E. Wing v. Commissioner, 17 B.T.A. 1028; Black v. Commissioner, 9 Cir., 114 F.2d 355, 359.

Burnet v. Leininger, 285 U.S. 136, 52 S. Ct. 345, 76 L.Ed. 665, principally relied upon by the defendant, is distinguishable. It involved an attempt to rearrange interests in an existing business so as to give a wife a partnership interest out of her husband's share for no payment or capital contribution. On the income tax liability involved, it was the court's view that the transaction amounted to no more than an attempted assignment of an interest in income which could only have been earned by the husband's efforts and that, therefore, the husband was taxable upon the income sought to be diverted. The important factual elements of that case have no corresponding equivalents here. Here Mrs. Rupple's interest was established by agreement supplemented by her investment of money borrowed by her and acquirement of her husband's $500 interest on credit before the Egg Company started business. She was thus interested in the joint venture at and before the inception of operations of the Egg Company; there was at that time no existing situation which anyone could possibly change with an eye to tax evasion or avoidance.

For substantially the same reasons that Burnet v. Leininger, supra, is inapplicable, other authorities relied on by the defendant are not in point or cannot be followed under the tests set forth in the Tower case, supra.

I am of the opinion that the plaintiff is entitled to recover the amount of the overpayment of taxes for the year 1941 as claimed by him.

Findings of fact and conclusions of law, together with judgment, in conformity herewith will be entered. Let such be prepared by plaintiff's attorneys and presented for settlement on ten days' notice to counsel for defendant.