The Western Products Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

The Tivoli-Union Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Lo Raine Good Vichey, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 57615–57617. Filed September 24, 1957.

*Stanley L. Drexler, Esq.*, and *Ellis J. Sobol, Esq.*, for the petitioners.

*Frank C. Conley, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in the income tax of the petitioners as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| The Western Products Company | 57615 | 1950 | $5,962.61 |
| The Tivoli-Union Company | 57616 | 1950 | 3,231.08 |
| Lo Raine Good Vichey | 57617 | 1949 | 790.58 |
| | | 1950 | 76,614.57 |

Issues for determination are the correctness of the respondent's action (1) in determining the amounts of taxable income received by petitioners in 1950 as a result of a court judgment entered and paid during that year; (2) in including in the income of the Western Products Company for 1950 the amount of a check it had received in 1945; (3) in determining that a portion of the payments made in 1949 and 1950 by Lo Raine Good Vichey and the Western Products Company, respectively, to the Moffat Tunnel Improvement District were not deductible as taxes; (4) in disallowing a portion of the deduction taken by the Tivoli-Union Company for 1950 for advertising; (5) in failing to allow the Tivoli-Union Company a deduction for 1950 for the club dues of Lo Raine Good Vichey for that year; (6) in disallowing a deduction taken by Lo Raine Good Vichey for 1949 as a loss from storm; (7) in failing to allow Lo Raine Good Vichey a deduction for 1949 as interest paid in satisfaction of an obligation of Fortuna Investment Company; and (8) in failing to allow Lo Raine Good Vichey a deduction for 1950 for nonbusiness bad debts.

### GENERAL FINDINGS OF FACT.

Some of the facts have been stipulated and are' found accordingly.

The Western Products Company (sometimes hereinafter referred to as Western Products) is a Colorado corporation, organized in 1921, and has its principal office in Denver, Colorado. It filed its Federal income tax return for 1950 with the collector of internal revenue for the district of Colorado.

The Tivoli-Union Company (sometimes hereinafter referred to as Tivoli) is a Colorado corporation, organized in 1921, and has its principal office in Denver, Colorado. It filed its Federal income tax return for 1950 with the collector of internal revenue for the district of Colorado.

Lo Raine Good Vichey (whose name was Lo Raine Good Kent during the periods involved herein) presently resides in New York, New York. At all other times material herein she resided in Denver, Colorado. She filed her Federal income tax returns for 1949 and 1950 with the collector of internal revenue for the district of Colorado.

The principal business activity of Tivoli since its organization has been the brewing of beer and related products. The principal business activity of Western Products since its organization has been that of distributor of the products manufactured by Tivoli. All of the outstanding stock of Tivoli and of Western Products is presently owned by Mrs. Vichey. During 1946, but subsequent to July 26, the Fortuna Investment Company (sometimes hereinafter referred to as Fortuna), a Colorado corporation, was liquidated and its assets were

distributed to Mrs. Vichey, as sole stockholder. Fortuna was organized in 1911 and operated as a holding company.

John Good and Rosalia M. Good were the parents of John Edward Good. John Good died testate in 1918. By his will he created a trust (sometimes hereinafter referred to as the John Good Trust) of which John Edward Good and Rosalia M. Good were the original trustees. Rosalia M. Good was given a life estate in the trust property. The trust terminated by its terms on January 12, 1937. John Edward Good died testate on August 21, 1931. At the time of his death Mrs. Vichey was his wife and she was named in his will as the beneficiary of the residuary portion of his estate. In his will she also was named appointee of an interest in the residuary portion of the John Good Trust. Administration of the estate of John Edward Good was completed on May 21, 1935, and the distribution to Mrs. Vichey of the residuary portion of the estate was then ordered. Rosalia M. Good died testate on October 1, 1936. Mrs. Vichey was named in her will as the beneficiary of the residuary portion of her estate. Administration of the estate of Rosalia M. Good was completed on February 7, 1939, and distribution to Mrs. Vichey of the residuary portion of the estate was then ordered.

Wilbur F. Denious, a Denver attorney, was attorney for John Good. Denious was attorney for the trustees of the John Good Trust. After the death of John Edward Good, Denious acted as successor trustee of the trust with Rosalia M. Good and after her death he acted as sole trustee. Denious was attorney for John Edward Good during his lifetime and acted as executor of his estate. He also acted as executor of the estate of Rosalia M. Good. In handling the John Good Trust and the estates of John Edward Good and Rosalia M. Good, Denious acted not only as trustee or executor but also as attorney for the trust and attorney for the respective estates.

As appointee of an interest in the residuary portion of the John Good Trust and as beneficiary of the estates of John Edward Good and Rosalia M. Good, Mrs. Vichey, upon distribution of the trust and the estates, became the owner of various properties of considerable magnitude, including 87½ per cent of the stock in Western Products, Tivoli, and Fortuna. The remainder, 12½ per cent, of the stock in the companies was owned by William Burghardt until his death in 1936. Burghardt had been a close business associate of John Good, John Edward Good, and Denious. On August 13, 1938, Denious purchased the 12½ per cent of stock in Western Products, Tivoli, and Fortuna from the executor of Burghardt's estate at a cost of $39,750. On June 21, 1945, Denious purchased from Mrs. Vichey other stock in those corporations at a total cost of $19,875.

After Mrs. Vichey became the owner of the properties she received from the above-mentioned trust and estates, Denious continued to act as her attorney, her financial adviser, and her trusted confidant. Until November 19, 1945, she permitted him to retain and control all of her notes, deeds of trust, abstracts of title to real estate, bonds, certificates of corporate stock, including her stock in Western Products, Tivoli, and Fortuna, and the minute books, and all bank accounts. In fact, he had every muniment of title to all of her property, except her personal checking account, her belongings and effects, her home in Florida, and her apartment in New York. As a result of the foregoing, Denious had control of Western Products, Tivoli, and Fortuna and made himself president, treasurer, and a director of them. He also acted as attorney for them. As a result of certain disclosures which showed an irregularity on the part of Denious in the acquisition of certain real estate belonging to one of the foregoing corporations, he, on November 19, 1945, was discharged by Mrs. Vichey as her attorney and as attorney for the three corporations and as an officer and director of them.

*Issue 1. Taxable Income of Petitioners for 1950 Resulting From Court Judgment.*

FINDINGS OF FACT.

On December 5, 1945, Mrs. Vichey became the owner of all the stock in Western Products, Tivoli, and Fortuna as a result of her purchase from Denious of the stock he theretofore had acquired in those corporations.

On July 26, 1946, Mrs. Vichey, Tivoli, Western Products, and Fortuna, as plaintiffs, instituted in The District Court In and For the City and County of Denver, State of Colorado (sometimes hereinafter referred to as District Court), an action (Civil Action No. A–49352) against Denious for an accounting. The complaint was laid in two causes of action.

The first cause of action alleged that Mrs. Vichey by reason of the provisions of the wills of John Good, John Edward Good, and Rosalia M. Good became entitled as the residuary legatee to the Good "fortune"; that because of her confidence and faith in the integrity, honesty, and business judgment of Denious, she permitted him to exercise absolute control of her companies and her individual holdings; that he had made substantial profits from the transfer of properties and had to account for the same and had failed to account for amounts received from the sale of properties; that he had withheld rents which he had received; and that there were other assets to which she or her companies were entitled and which were not accounted for.

In her prayer for relief under this cause of action, she demanded an accounting for all moneys and properties belonging to her, the John Good Trust, the John Edward Good estate, the Rosalia M. Good estate, and the three corporations, Tivoli, Western Products, and Fortuna, from the time of the death of John Edward Good on August 21, 1931, to November 19, 1945, when Denious was discharged.

As the second cause of action, Mrs. Vichey alleged that Denious, after advising her that she would be unable to raise the money required to make such purchase, had purchased in his own name the stock held by William Burghardt in Tivoli, Western Products, and Fortuna and that at a later time Denious, after advising her that it would be necessary for her to sell the stock in order to pay certain of her indebtedness, purchased other stock from her; that if Denious had made full disclosure and had truthfully represented all facts to her, it would not have been necessary for him to have acquired those stocks; and that as a result of his purchase of the foregoing stocks Denious had received dividends from Tivoli and Western Products amounting to a total of $45,572.49. In her prayer for relief under this cause of action, she asked for the return by Denious of that amount.

After the disposition of certain motions which had been filed, Denious, on March 17, 1947, filed his answer. As to the first cause of action alleged by the plaintiffs, he pleaded full accord and satisfaction and a release of all matters and claims existing as of April 20, 1937, when he closed the estates and obtained a receipt from Mrs. Vichey and that by reason thereof plaintiffs were estopped and barred from asserting any claims against him. He further pleaded the statute of limitations and that the plaintiffs had been guilty of laches.

As to the second cause of action, Denious admitted that Mrs. Vichey could have raised the money to purchase in 1938 the 12½ per cent of stock in Tivoli, Western Products, and Fortuna formerly owned by Burghardt, and to pay certain of her indebtedness but alleged that in accordance with an agreement, she, on December 5, 1945, repurchased the stocks from him thereby ratifying and confirming his action and, further, that at the time of his purchase of the stocks she had been fully advised by another attorney who resided in Florida.

On August 16, 1948, the District Court ordered an accounting between the parties as to all matters in controversy between them.

An accounting was taken in accordance with the order of the District Court. On December 19, 1950, that court entered its opinion, findings, and judgment, holding in the main for the plaintiffs but allowing the defendant, Denious, certain offsets held due him. Thereafter, during 1950, Denious made payment of the judgment.

In its opinion, findings, and judgment, the District Court, for convenience, and for the stated reason that Mrs. Vichey (then Mrs. Kent) as owner of all outstanding stock of the three plaintiff corporations was in reality the real party in interest as to them, referred to all the plaintiffs collectively as "plaintiff" or as "plaintiff Lo Raine Good Kent." Accordingly, the court, in general, made no attempt to specify what portion of the proceeds of the judgment may have been derived from the John Good Trust, or the estates of John Edward Good and Rosalia M. Good, or which parts of the judgment should accrue to the various plaintiffs. Upon payment of the judgment by Denious, the plaintiffs allocated the proceeds between them. In making the determinations of the deficiencies involved herein, the respondent adopted the allocation so made.

At the conclusion of the presentation of evidence by the parties in the action in the District Court, the "plaintiff" asked leave to amend the complaint to ask for $50,000 for attorneys' fees and $25,000 for outlay to accountants, together with court costs, for reporters and witness fees, and further to ask that because of his violation of his duties, Denious be required to repay $148,638.10 attorney's fees he had collected from plaintiff and her various "entities" from 1931 to 1945. The court denied the request on the ground that since the action was an equitable one it had jurisdiction to determine those matters without their being specifically pleaded. Respecting the violation by Denious of his duties the court said:

The Court would be unjust if it did not state that in the great majority of the matters that the defendant handled for the plaintiff, or her predecessors, he showed marked ability and demonstrated good business skill, and, though requested to require the defendant to return fees paid to him in the amount of $148,638.10 because of his being false to his trust, and while there is respectable authority for such action, this Court will not be so drastic as to forfeit the entire amount.

The Court feels that the plaintiff has sustained, by a preponderance of the evidence, the allegations of her complaint in which she charged that there had been an abuse by the defendant of his duties as her confidential advisor and representative, namely, as executor and trustee of the estates in which she was vitally interested, as attorney for these estates and her companies, as president, treasurer, director and managing head of her companies, and as her own personal attorney and advisor. She has sustained her allegations that his actions were committed with bad faith, intentionally, and with a reckless disregard and indifference to her interests, and that as a result of this conduct he derived substantial profits.

The court further stated:

The Court, as set forth in the opinion, with certain exceptions hereinafter noted, has denied the relief sought by plaintiff to the defendant over the period August 21, 1931, to December 31, 1945, as follows:

| Paid by: | Amount |
|---|---|
| John Good Trust | $47,825.55 |
| Estate of John E. Good | 31,250.00 |
| Estate of Rosalia M. Good | 4,500.00 |
| Tivoli-Union Company | 54,507.00 |
| Western Products Company | 8,400.00 |
| Fortuna Investment Company | 2,155.55 |
| Total | $148,638.10 |

Nor is the defendant being penalized for commissions and fees on loans.

As a forfeiture of compensation heretofore paid to an unfaithful trustee, the Court is allowing the plaintiff the sum of $75,000.00, which the Court finds to be a reasonable sum in compensation for attorneys' fees, accountant and auditing fees made necessary in the instant action because of the refusal of the defendant to account to the plaintiff for his actions as hereinbefore set forth, and the Court orders and decrees that the defendant is liable therefor and judgment enters for such sums against the defendant and in favor of the plaintiff as of this date.

The plaintiffs allocated the above-mentioned $75,000 between them as follows:

| | |
|---|---|
| Mrs. Vichey | $42,171 |
| Tivoli | 27,503 |
| Western Products | 4,238 |
| Fortuna | 1,088 |
| Total | 75,000 |

In their income tax returns for 1950 the petitioners did not report as income any portion of the amounts thus allocated to them, but with respect to the $75,000 and other amounts received under the judgment, attached to their respective returns a schedule which reads as follows:

The attached return has been prepared without including in income certain amounts awarded in the judgment of the District Court of Denver, Colorado, to the taxpayer in an accounting suit against Wilbur F. Denious. It is believed that these amounts were in the nature of punitive damages, and hence, do not constitute taxable income to the taxpayer.

If the Bureau of Internal Revenue should prefer to review the matter, an immediate examination of the return is invited.

In determining the deficiencies in controversy the respondent determined that the $75,000 constituted income and that the amounts thereof which were allocated to the respective petitioners constituted income taxable to them for 1950.

The District Court concluded that in 1938 Mrs. Vichey was financially able to have acquired the stock formerly owned by Burghardt in Tivoli, Western Products, and Fortuna; that when she later sold other stock to Denious to pay an indebtedness she could have obtained the money to pay the indebtedness without selling the stock; that there was an absolute lack of any necessity for Denious to have purchased any of the foregoing stocks in his own name; and that

Mrs. Vichey had not consulted or been advised by a lawyer in Florida respecting her sale of stock to Denious. Accordingly, as part of its judgment in addition to other amounts, it ordered Denious to "return" $13,466.09, representing the amount of dividends he had received from Western Products during the period December 31, 1938, through September 6, 1945, and $32,106.40, representing the amount of dividends he had received from Tivoli during the period December 31, 1938, through September 7, 1945, or a total of $45,572.49. In their allocation the plaintiffs allocated the entire amount to Mrs. Vichey.

In her income tax return for 1950 Mrs. Vichey did not report any portion of the $45,572.49 as income. The respondent determined that the entire amount constituted income taxable to her for 1950.

In addition to the foregoing, the judgment of the District Court included items and amounts which arose from properties originally constituting part of the John Edward Good estate which was distributed to Mrs. Vichey on February 21, 1935, and the John Good Trust which terminated on January 12, 1937, and items and amounts on other property owned by Mrs. Vichey. The following is a statement of such items and amounts allowed in the judgment, property source, amounts accrued at the time of distribution or termination, and after distribution or termination in case of properties originating with the foregoing estate or trust, and amounts reported as income by Mrs. Vichey for 1950:

| Item | Amounts allowed in the judgment | Source | Accrued | | Reported as income |
|---|---|---|---|---|---|
| | | | Prior to distribution | After distribution | |
| George J. Bancroft, net rents collected Oct. 30, 1933, to Aug. 26, 1938. | $1,305.62 | John Edward Good estate. | ---------- | $1,305.62 | $1,305.62 |
| Dora Ayres Byers, rent collected Jan. 31, 1938. | 250.00 | Mrs. Vichey | ---------- | ---------- | 250.00 |
| Cannon, Weicker, Schwalb loan, interest collected in 1935 and 1936. | 107.51 | Mrs. Vichey | ---------- | ---------- | 107.51 |
| Jennie and Jacob Cohen rent collected Dec. 10, 1934. | 95.00 | John Edward Good estate. | $95.00 | ---------- | 95.00 |
| James N. Doyle rents—balance June 1, 1940, plus net rents collected June 1, 1940, to Dec. 31, 1945. | 9,123.83 | John Good Trust | ---------- | 9,123.83 | ---------- |
| James N. Doyle, rents collected Jan. 1, 1946, to Dec. 31, 1950. | 6,878.17 | John Good Trust | ---------- | 6,878.17 | 6,878.17 |
| James N. Doyle, excess of charges to rents—1934 and 1938 over taxes paid for 1928 through 1932. | 267.70 | John Good Trust | ---------- | 267.70 | ---------- |
| Julius Heitler, loan, interest collected June 30, 1942. | 393.75 | Mrs. Vichey | ---------- | ---------- | 393.75 |
| Perry and Martin, loan, interest collected Apr. 20, 1934, less amount remitted. | 45.00 | John Edward Good estate. | 45.00 | ---------- | 45.00 |
| Saliman loan, excess of principal of loan collected on Sept. 16, 1935, and not remitted. | 500.00 | John Edward Good estate. | ---------- | ---------- | 500.00 |
| Sturtevant loan, interest collected Feb. 3, 1937. | 495.00 | Mrs. Vichey | ---------- | ---------- | 495.00 |
| Sturtevant, excess of amounts collected Sept. 13, 1934, for taxes over amount of tax paid. | 460.18 | John Good Trust | 460.18 | ---------- | 460.18 |
| Raymond P. Griffin, Sterling Apartments, net rents collected Apr. 1, 1936, to Nov. 1, 1939. | 10,248.52 | John Good Trust | ---------- | ---------- | ---------- |
| Raymond P. Griffin, Sterling Apartments, gain from sale of the property on Sept. 25, 1939. | 2,809.49 | John Good Trust | ---------- | 2,809.49 | ---------- |

In addition to determining that the foregoing amounts reported as income by Mrs. Vichey were taxable income to her for 1950, the respondent determined that the following amounts also constituted taxable income to her for that year:

*Rents*

| | |
|---|---|
| James N. Doyle, rents to Dec. 31, 1945 | $9, 123. 83 |
| James N. Doyle, excess of charges for taxes over taxes paid | 267. 70 |
| Raymond P. Griffin, Sterling Apartments, net rent Apr. 1, 1936, to Nov. 1, 1939 | 10, 248. 52 |

*Gain—Sale of capital assets*

| | |
|---|---|
| Raymond P. Griffin, Sterling Apartments | 1, 404. 75 |

With respect to another item, Harry Weinstein, Harwin Apartments, which represented an investment made from funds of Western Products, the judgment included an amount of $7,779.66 for net rents collected for the period December 1, 1933, to November 27, 1934 ($5,351.70 representing net rents from December 1, 1933, to September 30, 1934, and $2,427.96 representing net rents from October 1, 1934, to November 27, 1934), and an amount of $11,331.31 representing the gain on the sale of the property in 1934.

In its income tax return for 1950 Western Products reported as income from the property only the net rents of $5,351.70 collected for the period December 1, 1933, to September 30, 1934. In determining the deficiency against Western Products for 1950 the respondent determined that the net rents of $2,427.96 collected for the period October 1, 1934, to November 27, 1934, and the gain of $11,331.31 on the sale of the property also constituted taxable income.

In the judgment, interest of $5,373.10 was allowed on moneys which Denious collected but which he delayed in depositing in the bank. The plaintiffs allocated $5,344.21 of the foregoing amount to Mrs. Vichey and the remainder of $28.89 to Tivoli. The foregoing amounts were reported as income for 1950 by Mrs. Vichey and Tivoli, respectively.

Under the judgment the plaintiffs were entitled to interest to July 26, 1946, on the amounts of their claims allowed by the District Court. Such interest amounted to $14,529.06. The plaintiffs allocated that amount between them as follows:

| | |
|---|---|
| Mrs. Vichey | $8, 904. 07 |
| Tivoli | 9. 69 |
| Western Products | 5, 567. 40 |
| Fortuna | 47. 90 |

Of the foregoing amounts the petitioners reported the following amounts as income in their returns for 1950:

| | |
|---|---|
| Mrs. Vichey | $2, 386. 46 |
| Tivoli | 9. 69 |
| Western Products | 1, 559. 00 |

In determining the deficiencies for 1950 the respondent determined that the entire amounts of the interest allocated to the petitioners constituted taxable income to them for that year and increased the taxable incomes of Mrs. Vichey and Western Products by the amounts of $6,517.61 and $4,008.40, respectively, representing the portions of the interest allocated to them which they did not report as income.

OPINION.

The District Court entered judgment for the plaintiffs against Denious for $75,000 which they allocated between themselves as follows:

| | |
|---|---:|
| Mrs. Vichey | $42,171 |
| Tivoli | 27,503 |
| Western Products | 4,238 |
| Fortuna | 1,088 |

The respondent accepted the foregoing allocations and determined that the amount allocated to and received by each of the petitioners constituted income taxable for 1950. In support of his determination he contends that the $75,000 represented punitive damages and that under the decision in *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426, the portions of that amount allocated to the respective petitioners was taxable income to them for 1950.

The petitioners deny that the $75,000 constituted punitive damages but concede on brief that for another reason the amounts allocated to Tivoli and Western Products were taxable to them for 1950. The concession of the petitioners leaves for consideration the respondent's determination with respect to Mrs. Vichey only. The petitioners contend that under a proper interpretation of the language of the District Court in allowing judgment for the $75,000, the portion thereof allocated to and received by Mrs. Vichey was not taxable income to her. They suggest several possible and varying interpretations, the principal one being that the District Court by its judgment in effect ordered a return by Denious of a portion of the $148,638.10 of fees which had been paid to him by the two Good estates, the Good Trust, and the three plaintiff corporations. The petitioners contend that under such an interpretation and since Mrs. Vichey had paid no portion of such fees, the portion of the $75,000 allocated to her was not income to her under the tax benefit rule.

From a consideration of the opinion, findings, and judgment entered by the District Court, we are unable to conclude that the $75,000 represented punitive damages. Although the paragraph in which the District Court gave judgment for the $75,000 begins with the recital, "As a forfeiture of compensation paid to an unfaithful trustee," nevertheless, that paragraph after reciting the allowance of the

$75,000 continues with the recital, "which [amount] the Court finds to be a reasonable sum in compensation for attorneys' fees, accountant and auditing fees made necessary in the instant action because of the refusal of the defendant to account to the plaintiff for his actions as hereinbefore set forth." As we view the matter, the District Court, after having found that Denious was under duty to account to the plaintiffs, that he had refused to do so, and that it had been necessary for the plaintiffs to employ attorneys and accountants to obtain such an accounting, concluded that the plaintiffs were entitled to be compensated for attorneys' and accountants' fees to the extent of $75,000, which the court considered to be a reasonable sum for such purposes. In that view of the judgment the plaintiffs were compensated to the extent of $75,000 for their legal and accounting costs in obtaining the accounting and in collecting from Denious the amounts to which the District Court found that they were entitled.

The record is silent as to the exact amount Mrs. Vichey paid as attorneys' and accountants' fees in the action against Denious or in what amount they were paid in any given year. However, we are satisfied that the amount of such fees paid by her up to but not exceeding $42,171, the portion of the $75,000 allocated to her, constituted an allowable deduction to her under section 23 (a) (2) of the Internal Revenue Code of 1939 for the year or years in which paid. The revenue agent's report upon which the respondent's notice of deficiency to her was based was submitted in evidence by stipulation of the parties. The report contains the statement that the full amount of her attorneys' and accountants' fees in connection with the action against Denious had been allowed as deductions in 1950 and prior years. In view of this statement and since the record fails to show the statement to be erroneous, we conclude that she has been allowed deductions for attorneys' and accountants' fees in the action to the extent of $42,171. Consequently, her receipt of a like amount under the judgment resulted in a realization of income to her for 1950. The respondent's action is sustained.

Taking the position that Denious held the $45,572.49 of dividends from Tivoli and Western Products as a constructive trustee for Mrs. Vichey and that under the rule of *Vincent* v. *Commissioner*, (C. A. 9) 219 F. 2d 228, reversing 18 T. C. 339, the dividends were taxable to Denious as trustee when he received them and were not taxable to Mrs. Vichey when she recovered them, the petitioners contend that the respondent erred in determining that the amount of the dividends constituted taxable income to Mrs. Vichey for 1950.

As we understand the opinion of the Court of Appeals for the Ninth Circuit in the *Vincent* case, that court concluded from the record before it that the taxpayer's uncle, Albert Hansen, held the

corporate stock there involved as trustee under an express trust of which the taxpayer was beneficiary; that under the terms of the express trust and the provisions of the applicable revenue acts and the Internal Revenue Code of 1939 relating to trusts, the dividends received by Hansen during the years of his trusteeship were taxable to him as trustee when received; and that when the taxpayer received the dividends subsequent to the death of Hansen, they were not, under the pertinent provisions of the Code, taxable to her. Although some of the statements of the court are to the effect that under the California Penal Code Hansen was guilty of theft as to the stock and the dividends therefrom, nevertheless, the court was careful to make clear that his trust was an express trust and not an *ex maleficio* or resulting trust.

The provisions of the various revenue acts and the Code relating to trusts are addressed to express trusts and not to constructive, resulting, or *ex maleficio* trusts. *Stoddard* v. *Eaton*, 22 F. 2d 184; *Claud McCauley*, 17 B. T. A. 886, aff'd. 44 F. 2d 919; *Benjamin F. Wollman*, 31 B. T. A. 37; *Prudence Miller Trust*, 7 T. C. 1245; *Lee McRitchie*, 27 T. C. 65. Since it is neither claimed nor shown that Denious held the stock in Tivoli and Western Products, or received therefrom the dividends in question, under an express trust of which Mrs. Vichey was beneficiary, we conclude that the holding of the Court of Appeals for the Ninth Circuit in the *Vincent* case is inapplicable here.

The taxability of the proceeds of a lawsuit depends on the nature of the claim and the actual basis of the recovery in the suit. *H. Liebes & Co.* v. *Commissioner*, 90 F. 2d 932, affirming 34 B. T. A. 677; *Swastika Oil & Gas Co.* v. *Commissioner*, 123 F. 2d 382, affirming 40 B. T. A. 798, certiorari denied 317 U. S. 639; *Martin Brothers Box Co.* v. *Commissioner*, 142 F. 2d 457; *Raytheon Production Corporation* v. *Commissioner*, 144 F. 2d 110, affirming 1 T. C. 952, certiorari denied 323 U. S. 779.

The basis on which Mrs. Vichey claimed and was allowed the dividends in the District Court action was that, if Denious had not improperly represented her financial situation to her, she would have acquired the Burghardt stock in Tivoli and Western Products and would not have sold Denious any of her stock in those corporations and that, consequently, she, and not Denious, would have been the recipient of the dividends. Having recovered the dividends on the basis of that claim, they were income to her when she received them in 1950.

The petitioners contend that the respondent erred in including in the taxable income of Mrs. Vichey for 1950 the amounts of several items or portions thereof which were allowed in the judgment but

which petitioners urge were earned by the John Good Trust or the estate of John Edward Good prior to the dates when she became entitled to the assets of those entities. The following is a statement of the items involved, the amounts allowed in the judgment, the source, and the amounts or portions thereof which the petitioners contend were earned prior to the time Mrs. Vichey became entitled to the assets of the trust or the estate:

| Item | Amounts allowed by the judgment | Source | Amounts claimed to have been earned prior to time Mrs. Vichey became entitled to assets of trust or estate |
|---|---|---|---|
| George J. Bancroft, net rents collected Oct. 30, 1933, to Aug. 26, 1938. | $1,305.62 | John Edward Good estate. | $305.90 |
| Cannon, Weicker, Schwalb loan, interest collected in 1935 and 1936. | 107.51 | John Good Trust_____ | 107.51 |
| Jennie and Jacob Cohen, rent collected Dec. 10, 1934. | 95.00 | John Edward Good estate. | 95.00 |
| James N. Doyle, rents—balance June 1, 1940, plus net rents collected June 1, 1940, to Dec. 31, 1945. | 9,123.83 | John Good Trust_____ | 234.28 |
| Perry and Martin loan, interest collected Apr. 20, 1934, less amount remitted. | 45.00 | John Edward Good estate. | 45.00 |
| Sturtevant, excess of amounts collected Sept. 13, 1934, for taxes over amount of taxes paid. | 460.18 | John Good Trust_____ | 460.18 |
| Raymond P. Griffin, Sterling Apartments, net rents collected Apr. 1, 1936, to Nov. 1, 1939. | 10,248.52 | John Good Trust_____ | 3,203.02 |

Denious was executor of the estate of John Edward Good. Administration of the estate was completed and distribution thereof ordered on May 21, 1935. Denious also was the sole trustee of the John Good Trust at the termination thereof on January 12, 1937.

From the evidence before us we are unable to find that any portion of the George J. Bancroft net rents was earned or accrued prior to the distribution of the estate of John Edward Good. Also, we are unable to find from the evidence that any portion of the James N. Doyle rents or the Raymond P. Griffin, Sterling Apartments, net rents were earned or accrued prior to the termination of the John Good Trust. Further consideration will be given hereinafter to the foregoing three items.

As to the remainder of the items set out in the above statement, those originating with the estate of John Edward Good had been collected by Denious prior to the distribution of the estate and those originating with the John Good Trust also had been collected by Denious prior to the termination of the trust. Collection was made by Denious in 1934 of the items originating with the estate of John Edward Good. The will of John Edward Good did not contain any provision authorizing the distribution of income during the period of administration of the estate. As a consequence, those items constituted income of the estate taxable for 1934 and Denious as executor of the estate was liable for a return therefor and for the payment of

the tax thereon.   Secs. 142, 161, and 162, Revenue Act of 1934; *Mabel I. Wilcox*, 43 B. T. A. 931.   Consequently, upon distribution of the estate, Mrs. Vichey, as residuary·beneficiary thereof, became entitled to receive the amounts of the items which, as to her, constituted legacies.   When she received payment of the amounts, she received payments of legacies and not payments of income.   *Mabel I. Wilcox, supra.*

The items originating with the John Good Trust were collected in the years 1934, 1935, and 1936, which was during the lifetime of Rosalia M. Good. ˙She was entitled to the net income of the trust which was distributable currently.   Consequently, it was currently deductible by the trust and was taxable to her currently whether distributed or not.   Sec. 162 (b), Revenue Acts of 1934 and 1936. Since the amounts of the items in question were not paid to her by Denious, they became assets (accounts receivable from Denious) of her estate upon her death.   But since Denious did not make payment to her estate, Mrs. Vichey, as residuary beneficiary of the estate, upon distribution thereof, became the owner of such accounts receivable.   Accordingly, when she received payment of them from Denious, she received payments of legacies and not payments of income.

The petitioners contend that the respondent erred in including in the taxable income of Mrs. Vichey for 1950 the following items of income for which the District Court entered judgment and which had been earned and which had been received by Denious in prior years with respect to property owned by her:

| Item | Amount | When received by Denious |
|---|---|---|
| George J. Bancroft, net rents collected Oct. 30, 1933, to Aug. 26, 1938. | $1,000.00 | 1938. |
| Dora Ayres Byers, rent collected | 250.00 | Jan. 31, 1938. |
| James N. Doyle, rents collected | 8,889.55 | To Dec. 31, 1945. |
|  | 6,878.17 | Jan. 1, 1946, to Dec. 31, 1950 |
| James N. Doyle, excess of charges to rents in 1934 and 1938 over taxes paid for 1928 through 1932. | 267.70 | |
| Raymond P. Griffin, Sterling Apartments, gain from the sale of the property. | 2,809.49 | Sept. 25, 1939. |
| Julius Heitler loan, interest collected | 393.75 | June 30, 1942. |
| Sturtevant loan, interest collected | 495.00 | Feb. 3, 1937. |

Since, as heretofore stated, we are unable to find that any portion of the George J. Bancroft net rents were earned or accrued prior to the distribution of the estate of John Edward Good, the entire amount of net rents allowed in the judgment of the District Court, $1,305.62, is involved here instead of only $1,000 as set out in the preceding statement.   Further, since, as stated heretofore, we are unable to find that any portion of the James N. Doyle rents was earned or accrued prior to the termination of the John Good Trust, the entire amount allowed in the judgment with respect to this item, $9,123.83, is involved here

instead of only $8,889.55 as set out in the above statement. Similarly, since we are unable to find that any portion of the Raymond P. Griffin, Sterling Apartments, net rents was earned or accrued prior to the termination of the John Good Trust, the entire amount allowed in the judgment with respect to this item, $10,248.52, also is involved here.

In support of their contention the petitioners take the position that the amounts in controversy here were taxable to someone for the years in which they were received by Denious, that although the District Court did not find such to be the fact, nevertheless, Denious embezzled the amounts during the years in which he received them, but that under the decision in *Commissioner* v. *Wilcox*, 327 U. S. 404, they were not taxable to him, and that since the District Court determined that Mrs. Vichey was entitled to such amounts, we should find that they were taxable to her for the years in which received by Denious and not for 1950 when the judgment of the District Court was entered and paid.

There is some indication in the record that in the early part of 1946 and prior to filing the action against Denious in July 1946, Mrs. Vichey caused a grand jury investigation of Denious's handling of her affairs, but the record does not indicate that any indictment or conviction resulted from the investigation. In view of this and since the District Court did not find that Denious embezzled funds of Mrs. Vichey, we are unable to find from the limited evidence of record bearing on the question that Denious committed the crime of embezzlement. *Bula E. Croker*, 27 B. T. A. 588.

Prior to 1950, Denious denied and contested the right of Mrs. Vichey to receive the items of income involved here. It was not until the District Court's decision and judgment in 1950 that her right to receipt became fixed and unconditional. Shortly thereafter and during 1950 she received payment. Thereupon and for the first time such items of income became taxable to her. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Swastika Oil & Gas Co.* v. *Commissioner, supra*. The respondent's action as to the items in question is sustained.

With respect to the rents for 1933 and 1934 from the Harry Weinstein, Harwin Apartments, and the gain from the sale of that property, arising from an investment made from funds of Western Products and for which judgment was allowed by the District Court, the petitioners contend that such amounts were not taxable income to Western Products for 1950. The petitioners take here a position similar to that taken by them above with respect to recoveries by Mrs. Vichey of rents, interest, and gains which had been received by Denious from her properties. Since our holding in the immediately preceding paragraph as to the year when such items of income were taxable is applicable here, we hold that the rents from Harry Weinstein, Harwin Apartments, and the gain from the sale of that property were taxable income

to Western Products for 1950. Accordingly, the respondent's action as to those items is sustained.

On September 16, 1935, Denious collected a portion of the principal of the Saliman loan but failed to remit $500 of the amount so collected. The evidence bearing on this question shows that $383 of the amount he failed to remit was principal owing to the John Good Trust and the remainder, $117, was principal owing to the estate of John Edward Good. Under these circumstances, in 1950, when Mrs. Vichey, as residuary beneficiary of the estate of John Edward Good and as appointee of the John Good Trust, received the $500 from Denious, that amount represented legacies to her and not income.

On brief the petitioners concede that interest of $5,373.10 allowed in the judgment on account of delayed deposits by Denious of sums he had collected constituted taxable income to Mrs. Vichey and Tivoli for 1950 in the amounts allocated to them, namely, $5,344.21 and $28.89, respectively.

In their income tax returns for 1950, Mrs. Vichey and Western Products reported the amounts of $2,386.46 and $1,559, respectively, as their portions of the interest to July 26, 1946, allowed by the judgment on their respective claims. In determining the deficiencies the respondent increased the amounts reported by $6,517.61 and $4,008.40, respectively. Although Mrs. Vichey and Western Products in their respective petitions assigned error as to the action of the respondent, they have not submitted any evidence showing that such action is erroneous, nor have they mentioned the matter on brief. Accordingly, we conclude that they have abandoned the issue presented by their assignments of error and hold for respondent.

*Issue 2. The Inclusion in the Income of Western Products for 1950 of the Amount of a Check it had Received in 1945.*

FINDINGS OF FACT.

About November 1945, Denious issued to Western Products a check for $257.10 representing income arising from one of its properties during that year. Western Products did not include the amount as income for 1945 and did not immediately cash the check but held it for possible use as an exhibit by the plaintiffs in the action which subsequently was instituted in the District Court against Denious on July 26, 1946. Although the check was used as an exhibit in that proceeding, the judgment of the District Court which was entered on December 19, 1950, allowed no amount with respect to it. After entry of the judgment and because of the stale date of the check, Western Products requested Denious to issue a new check for the same amount. Denious refused to issue a new check or to pay the amount of the one

issued in 1945 on the ground that the judgment was conclusive of all matters relating to his connection with the affairs of Western Products. Counsel for Western Products advised it that the check was not collectible and no further attempts at collection have ever been made. Despite the foregoing and despite the fact that Western Products maintained its books and records and filed its income tax return on an accrual basis, the amount of the check, nevertheless, was included in the income reported by Western Products on its return for 1950.

### OPINION.

In view of the evidence relating to this issue, we find no proper basis for the inclusion of the amount of the check issued in 1945 in the taxable income of Western Products for 1950. The petitioners are sustained on this issue.

*Issue 3. Deductibility as Taxes of Payments Made to Moffat Tunnel Improvement District.*

### FINDINGS OF FACT.

During 1949 Mrs. Vichey paid annual taxes of $873.46 levied by the Moffat Tunnel Improvement District (sometimes hereinafter referred to as Moffat District). In her income tax return for that year she deducted the foregoing amount as property taxes paid. Moffat District is an improvement district created by an Act of the Legislature of Colorado, approved May 12, 1922, and comprises the city and county of Denver, the counties of Grand, Moffat, and Routh, and portions of five other counties. The respondent, following his examination of a statement issued by the Moffat District of its receipts and disbursements for 1949, determined that $567.75 of the deduction taken by Mrs. Vichey was properly allocable to maintenance and interest charges of the Moffat District and allowed that amount. He determined that the remainder of the deduction, $305.71, was not properly allocable to such charges and disallowed it.

During 1950 Western Products paid annual taxes of $604.90 levied by the Moffat District and in its income tax return for that year deducted the amount as property taxes paid. The respondent, following his examination of a statement issued by Moffat District of its cash receipts and disbursements for 1950, determined that $350.84 of the deduction taken by Western Products was properly allocable to maintenance and interest charges of the Moffat District and allowed that amount. He determined that the remainder of the deduction, $254.06, was not properly allocable to such charges and disallowed it.

OPINION.

In support of their position that the respondent erred in disallowing a portion of the payments made by Mrs. Vichey and Western Products, the petitioners do not contend that any greater portions of the payments were properly allocable to maintenance and interest charges of the Moffat District than the portions determined by respondent. Instead, as we understand their argument, they contend that under the provisions of section 164 (b) (5) (B) of the Internal Revenue Code of 1954 payments of taxes levied by the Moffat District are deductible as taxes, that although those provisions of the Code are not expressly retroactive, they are merely declaratory of what was well settled law prior to their enactment, and that we should conclude that the entire amount of the payment made by Mrs. Vichey in 1949 and the entire amount of the payment made by Western Products in 1950 were deductible as taxes.

Respecting the allowance of deductions for taxes of the character herein involved, the Internal Revenue Code of 1939 provides as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(c) TAXES GENERALLY.—

(1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, except—

\* \* \* \* \* \* \*

(E) taxes assessed against local benefits of a kind tending to increase the value of property assessed; but this paragraph shall not exclude the allowance as a deduction of so much of such taxes as is properly allocable to maintenance or interest charges \* \* \*

The Internal Revenue Code of 1954 provides as follows:

SEC. 164. TAXES.

(b) DEDUCTION DENIED IN CASE OF CERTAIN TAXES.—No deduction shall be allowed for the following taxes:

\* \* \* \* \* \* \*

(5) Taxes assessed against local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not prevent—

(A) the deduction of so much of such taxes as is properly allocable to maintenance or interest charges; or

(B) the deduction of taxes levied by a special taxing district if—

(i) the district covers the whole of at least one county;

(ii) at least 1,000 persons are subject to the taxes levied by the district; and

(iii) the district levies its assessments annually at a uniform rate on the same assessed value of real property, including improvements, as is used for purposes of the real property tax generally.

In Revenue Ruling 284, 1955–1 C. B. 25, the respondent has ruled that the annual taxes levied by the Moffat District are levied within

the requirements specified in section 164 (b) (5) (B) of the Internal Revenue Code of 1954 and are deductible by taxpayers for taxable years beginning after December 31, 1953, and ending after August 16, 1954. In the same ruling he has held that for taxable years beginning before December 31, 1953, or ending on or before August 16, 1954, the taxes assessed by the Moffat District qualify for deduction only to the extent they are properly applicable to maintenance or interest charges, as provided by section 23 (c) (1) (E) of the Internal Revenue Code of 1939.

We are not called upon here to determine whether taxes paid to the Moffat District for taxable years ending subsequent to the effective date of the Code of 1954 are deductible by taxpayers under section 164 (b) (5) (B) of that Code. But we think it obvious that the provisions of section 164 (b) (5) (B) of the Code of 1954 grant deductions not provided for by section 23 (c) (1) (E) of the Code of 1939. Also see Senate Finance Committee Report No. 1622, 83d Cong., 2d Sess. (1954), pp. 23 and 196. That being the case, we cannot conclude, as petitioners contend, that the provisions of section 164 (b) (5) (B) are merely declaratory of what was well settled law prior to their enactment. Further, since under the provisions of section 7851 of the Code of 1954 the provisions of section 164 (b) (5) (B) of that Code are expressly made applicable to taxable years beginning after December 31, 1953, and ending after the date of the enactment of the Code, August 16, 1954, it is clear that such provisions cannot be applied retroactively to the years 1949 and 1950, involved herein.

The respondent is sustained on this issue.

*Issue 4. Disallowance of a Portion of the Deduction Taken by Tivoli as Advertisement Expenses.*

FINDINGS OF FACTS.

In the schedule of contributions attached to its income tax return for 1950, Tivoli listed 12 items of contributions totaling $1,076.50. Because the applicable statutory provisions limited the deduction for contributions made by corporations to an amount not in excess of 5 per cent of the corporation's net income as computed without the benefit of the deduction, Tivoli deducted in its return $754.25 for contributions. In determining the deficiency against Tivoli for 1950, the respondent determined that the amount properly allowable as a deduction for contributions was $739.38. That amount was $337.12 less than the total of contributions listed by Tivoli in its return.

In its return for 1950, Tivoli deducted $61,539.17 as advertising expenses. As a result of an investigation of the return by a revenue

agent, the respondent determined that Tivoli had included in the deduction taken for advertising expenses an amount of $541.50 representing gifts or donations (other than those mentioned in the preceding paragraph) made by it in varying amounts to or for 30 different organizations. The respondent determined that the $541.50 was not deductible and accordingly disallowed it. The gifts or donations to the 30 organizations were made upon the authorization of the vice president and general manager of Tivoli, who considered that they were good advertising for Tivoli and would aid in maintaining or developing its business in the area in which its products were sold.

### OPINION.

The petitioners contend that the respondent erred in not allowing Tivoli to deduct as ordinary and necessary expenses for 1950 gifts or donations totaling $541.50 as set out in the findings. The respondent takes the position that for 1950 Tivoli has been allowed the maximum amount deductible for contributions under section 23 of the 1939 Code and now seeks to have the 5 per cent limitation on contributions contained in that section disregarded and the $541.50 allowed as a deduction for business expenses.

Pertinent provisions of the Internal Revenue Code are set out below.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
(B) Corporate Charitable Contributions.—No deduction shall be allowable under subparagraph (A) to a corporation for any contribution or gift which would be allowable as a deduction under subsection (q) were it not for the 5 per centum limitation therein contained and for the requirement therein that payment must be made within the taxable year.
* * * * * *
(q) CHARITABLE AND OTHER CONTRIBUTIONS BY CORPORATIONS.—In the case of a corporation, contributions or gifts payment of which is made within the taxable year to or for the use of:
(1) The United States, any State, Territory, or any political subdivision thereof or the District of Columbia, or any possession of the United States, for exclusively public purposes; or
(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States, or of any State or Territory, or of the District of Columbia, or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, veteran rehabilitation service, literary, or educational purposes or for the prevention of cruelty to children (but in the case of contributions or gifts to a trust, chest, fund, or foundation, payment of which is made within a taxable year beginning after December 31, 1948, only if such contributions or gifts are to be used within the United States or any of its possessions exclusively for such purposes), no part of the net earnings of which inures to the benefit of any private shareholder

Section 23 (a) (1) (A) provides for the allowance as deductions, in computing net income, of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 23 (q) provides for the allowance as deductions, in computing the net income of a corporation, of contributions or gifts to or for the organizations therein described to an amount which does not exceed 5 per cent of the corporation's net income as computed without the benefits of that subsection. Section 23 (a) (1) (B) provides that no deduction shall be allowable to any corporation as an ordinary and necessary expense in carrying on a trade or business for any contribution or gift which would be allowable as a deduction under section 23 (q) were it not for the 5 per cent limitation therein contained.

In consequence of the foregoing it is apparent that where, as here, a corporation has been allowed the maximum amount deductible as contributions or gifts, it is not entitled to deduct the amount of other gifts or donations as ordinary and necessary business expenses if such gifts or donations were made to organizations of the class described in section 23 (q). Therefore, to be entitled to deduct the $541.50 in question as ordinary and necessary business expenses it was incumbent upon Tivoli to show affirmatively that no one of the 30 organizations to which that amount was given or donated was within the class described in section 23 (q). While the record shows the names of the various organizations, it is so devoid of other information with respect to them that we are unable to find that any one of them was not of a class described in section 23 (q). In view of such a state of the record, the respondent is sustained on this issue.

*Issue 5. Respondent's Failure To Allow Tivoli a Deduction for Payment of the Club Dues of Mrs. Vichey.*

#### FINDINGS OF FACT.

In determining the amount of Tivoli's net operating loss for 1951 to be carried back to 1950, the respondent disallowed a deduction of $144 taken by Tivoli for the payment of Mrs. Vichey's dues for 1951 to the Cherry Hills Country Club of Denver.

During 1951 she used the club to give an occasional party for the supervisory personnel of Tivoli so that they might become acquainted with her. "She definitely wanted to get them to know her." On such

---

or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation ; or

(3) Posts or organizations of war veterans, or auxiliary units of, trusts or foundations for, any such posts or organizations, if such posts, organizations, units, trusts, or foundations are organized in the United States or any of its possessions, and if no part of their net earnings inure to the benefit of any private shareholder or individual : to an amount which does not exceed 5 per centum of the taxpayer's net income as computed without the benefits of this subsection. * * *

occasions she informed them "that she was in accord with their work." She also used the club to give an occasional party for the attorney and accountant of Tivoli and possibly her advertising counsel. She also used the club to give other parties for other persons. The number or frequency of such parties and their purposes are not disclosed.

### OPINION.

The petitioners contend that Mrs. Vichey's use of her club membership was for the purpose of entertaining the customers and employees of Tivoli and that Tivoli's payment of her club dues constituted an ordinary and necessary business expense to it.

Substantial evidence is required to establish a right to deduct club dues as a business expense. *George K. Gann*, 41 B. T. A. 388. Cf. *Smith-Bridgman & Co.*, 16 T. C. 287, 295. The meager evidence submitted on this issue fails to meet that requirement. There is no evidence that Mrs. Vichey entertained any customers of Tivoli at the club. The evidence relating to her entertainment of Tivoli's supervisory personnel indicates that at best such entertainment was merely occasional and that it probably was primarily for her personal satisfaction. The fact that she occasionally entertained at the club persons who were the attorney and the accountant of Tivoli, along with her advertising counsel, gives little support to the contention of the petitioners. In view of the foregoing and since the record shows that Mrs. Vichey made further use of the club for the entertainment of an undisclosed number of other persons for undisclosed purposes, we cannot find that the respondent erred in disallowing the deduction in question.

*Issue 6. Disallowance of Deduction Taken by Mrs. Vichey for 1949 for Loss From Storm.*

### FINDINGS OF FACT.

Prior to January 1, 1949, Mrs. Vichey became the owner of an estate located in Lantana, Palm Beach County, Florida, and adjacent to the Vanderbilt estate. At all times material herein, her estate had a basis and fair market value of many thousands of dollars. On August 26, 1949, a tropical hurricane passed through and over Palm Beach County and damaged the estate. The damage to the buildings was fully compensated for by insurance but the damage to the grounds was not compensated for by insurance or otherwise. The damage to the grounds consisted of the loss of 14 ornamental trees and 118 ornamental shrubs. Immediately prior to the hurricane the foregoing trees and shrubs had a fair market value of $2,103.

With respect to the loss of the trees and shrubs, Mrs. Vichey deducted $2,388 as a casualty loss in her income tax return for 1949. The respondent disallowed the deduction.

Mrs. Vichey sustained a loss of $400 as a result of the hurricane.

OPINION.

Taking the position that since Mrs. Vichey has failed to show the value of her estate immediately preceding the hurricane and its value immediately after the loss of the trees and shrubs, the respondent contends that she has failed to discharge her burden of showing that his disallowance of the loss deducted was erroneous and that his action should be sustained.

It has been held that where a casualty loss has been sustained with respect to ornamental trees and shrubs on residential property, the trees and shrubs are to be treated as an integral part of the property and no separate basis assigned to them, and that the amount of the deductible loss is the difference between the value of the residential property immediately preceding the casualty and the value after the casualty, but not in excess of an amount equal to the adjusted basis of the property. *Buttram* v. *Jones*, 87 F. Supp. 322, and cases there cited.

The petitioners concede that the record does not show the difference in value of the estate before and after the casualty and does not contain evidence from which the amount of such difference, if any, might be determined. However, they contend in substance that since it has been stipulated the fair market value of the trees and shrubs immediately preceding the casualty was $2,103, we should conclude that the value of the estate was less after the casualty, apply the rule of *Cohan* v. *Commissioner*, 39 F. 2d 540, and allow the deduction of some amount as a loss. Under the rule of *Buttram* v. *Jones, supra*, the trees and shrubs are to be treated as an integral part of the property and no separate basis is to be assigned to them. Following that rule here, and with no more evidence relating to the matter than has been presented, we cannot conclude that the value of the estate was greatly affected by the loss of the particular trees and shrubs in question.

The destruction of the trees and shrubs required their removal. This in turn resulted in some expense, the specific amount of which is not shown by the record. However, from a consideration of the evidence presented as to the number, the height, and the size of the trees and shrubs, we are satisfied that something more than a nominal sum was incurred in their removal. In this situation and applying the rule of *Cohan* v. *Commissioner, supra*, we have found that Mrs. Vichey sustained a loss of $400 as a result of the hurricane. Cf. *Leet* v. *Commissioner*, 230 F. 2d 845.

*Issue 7. Failure of Respondent to Allow Mrs. Vichey a Deduction for 1949 as Interest Paid in Satisfaction of an Obligation of Fortuna Investment Company.*

OPINION.

In an amendment to her petition, Mrs. Vichey assigned as error the respondent's failure to allow her for 1949 a deduction of $2,-952.22 paid by her in that year in satisfaction of an interest obligation of Fortuna Investment Company which had been liquidated prior to 1949. The assignment of error, as well as the allegation of facts in support thereof, was denied by respondent. The record fails to disclose any evidence in support of this issue and the petitioners do not mention it on brief. Consequently, we assume that the issue has been abandoned and, accordingly, hold for the respondent because of lack of evidence to show error.

*Issue 8. Failure of Respondent to Allow Mrs. Vichey a Deduction for 1950 for Nonbusiness Bad Debts.*

FINDINGS OF FACT.

On December 23, 1946, Mrs. Vichey loaned $4,000 to Pierce Industries, Inc., evidenced by a promissory note of the corporation of even date, payable on or before December 23, 1949, and bearing interest from date at the rate of 5 per cent per annum, payable annually. On February 20, 1947, she loaned an additional $4,000 to Pierce Industries, Inc., which was evidenced by a promissory note of the corporation of even date, payable on or before February 20, 1950, and bearing interest from date at the rate of 5 per cent per annum, payable annually. Each of the notes contained the following provision:

IT IS AGREED that if this note is not paid at maturity the principal and accrued interest thereon shall draw interest at the rate of seven per cent, per annum. And a failure to pay any of said interest when due shall cause the whole note to become due and collectible at once, or the interest to be counted as principal, at the option of the holder of the note. * * *

Each of the notes was signed by Don C. Pierce, Jr., as president of Pierce Industries, Inc., and each of them was endorsed by C. H. Paddock and Don C. Pierce, Jr., who were the promoters and major stockholders of the corporation.

In addition to making the above loans to Pierce Industries, Inc., Mrs. Vichey also invested $3,500 in the stock of the corporation. The corporation engaged in the manufacture of a "gadget" of an undisclosed character. The corporation ceased business in 1947.

About the time Pierce Industries, Inc., ceased business, an attorney for Mrs. Vichey attempted to collect the notes from it, "[b]ut the

company just had nothing" and his efforts were fruitless. Thereupon her investment in the stock of the corporation was written off her books and a deduction was taken in her income tax return for 1947 for the loss she had sustained on the stock. Because the notes were endorsed by Paddock and Pierce, they were not written off at that time and deduction taken therefor in her income tax return.

Aside from the above-mentioned attempt to collect the notes from the corporation, no further attempts at collection were made until August 23, 1951, when an accountant for Mrs. Vichey addressed a letter to Pierce at Cleveland, Ohio. In that letter the accountant stated that no interest had been paid on the notes, that the notes were past due, that since the corporation had become "defunct" and that since Pierce and Paddock were the endorsers of the notes, Mrs. Vichey was looking to them for payment, and formally requested payment by Pierce. On September 4, 1951, Pierce addressed a reply to the accountant in which he stated that Pierce Industries, Inc., had no assets at the termination of its activity, that he (Pierce) fully recognized his obligation on the notes, that he had no assets of any kind, that any legal action to collect the notes from him would be unavailing, and that his financial situation during 1950 was the same as it was then (September 4, 1951). Since August 1951, no effort has been made to collect the notes. About the time in August 1951 that the accountant wrote Pierce requesting payment of the notes, he (the accountant) heard that Paddock was in Arabia and as a consequence no effort was or has been made to collect the notes from him.

### OPINION.

Taking the position that Pierce Industries, Inc., the maker of the notes, became "defunct" and without assets prior to 1949, that in 1950 Paddock, one of the endorsers of the notes, was out of the country, and that Pierce, the other endorser of the notes, was without assets and legal action against him would have been unavailing, the petitioners contend that the notes became worthless in 1950 and that Mrs. Vichey was entitled to a nonbusiness bad debt deduction of $8,000 for that year. The respondent contends that the evidence fails to show that the notes became worthless during 1950 and that, therefore, no deduction with respect to them should be allowed for that year.

Section 23 (k) (4) of the 1939 Code provides for the allowance to individuals of a deduction for a nonbusiness debt which "becomes worthless within the taxable year." For an indebtedness existing at the beginning of a given taxable year to become worthless within the taxable year it must have value at the beginning of the year and thereafter during the year something must occur which renders the

indebtedness destitute of value. Pierce Industries, Inc., the party primarily liable on the notes, ceased business in 1947 at a time when it was without assets. There is nothing to show that it ever thereafter acquired any assets. According to Pierce, one of the parties secondarily liable on the notes, he was without assets of any kind during 1950 and any legal action to collect the notes from him would have been unavailing. As to Paddock, the other party secondarily liable on the notes, the record shows that he was reported to have gone to Arabia. However, the record is silent as to when he went to Arabia or what his financial condition was during 1950 or any other year.

On the record presented, we are unable to find that the indebtedness represented by the notes in question had any value at the beginning of 1950, or that even if it had value at the beginning of that year, that anything occurred during the year which rendered it destitute of value. The petitioners having failed to show that the indebtedness became worthless within 1950, we hold for the respondent on this issue.

*Decisions will be entered under Rule 50.*