ALLAN HULL and ROSEMARY HULL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hull v. Commissioner
Docket No. 3653-72.
United States Tax Court
T.C. Memo 1973-209; 1973 Tax Ct. Memo LEXIS 80; 32 T.C.M. (CCH) 977; T.C.M. (RIA) 73209; September 19, 1973 Filed ALLAN HULL, pro se. JOHN P. GRAHAM, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1967 and 1969 in the respective amounts of $3,388.65 and $8,370.27. Two issues are presented for decision: 1. Whether petitioners received unreported taxable income in 1967 in the amount of $3,404.16; and 2. Whether petitioners sustained *81 a casualty loss as a result of a storm in 1969 in an amount in excess of $4,600. 2 FINDINGS OF FACT At the time they filed their petition in this proceeding, petitioners were legal residents of Chesterland, Ohio. They filed joint Federal income tax returns for 1967 and 1969. The terms "petitioner" and "petitioners" will refer respectively to Allan Hull, individually, and to Allan and Rosemary Hull, jointly. Issue 1. Income Allegedly Unreported Since 1938, petitioner has been engaged in the practice of law. For several years, he was in a partnership with Marvin Harrison and Craig Spangenberg. In 1959, the firm of Harrison, Spangenberg & Hull was dissolved, and petitioner formed his own firm in association with his brother and nephew. For many years, petitioner's clients included William E. Cotleur and various corporations controlled by Cotleur. Long prior to the dissolution of their law firm, Harrison , Spangengerg, and petitioner had formed a corporation, Guardian Commercial Service, Inc. This corporation had made loans to Cotleur, and petitioner had guaranteed some of these loans. On March 25, 1959, when the law firm was being dissolved, petitioner personally *82 paid $3,404.16 to discharge the balance due on Cotleur's debt to Guardian Commercial Service, Inc. Although this guaranty payment 3 and the subrogation of Cotleur's debt to petitioner were not reflected in petitioner's individual accounting books, Cotleur was informed of petitioner's payment, and Cotleur understood that he thereafter owed petitioner this amount. This debt was owed by Cotleur individually and not by his corporations. In the early part of 1966, Cotleur and his corporations were in financial difficulty. On July 28, 1966, petitioner and Cotleur, individually and on behalf of his several corporations, entered into an agreement describing certain enumerated notes owed to petitioner by Cotleur and his corporations for loans and legal services and setting forth procedures to be followed in making and securing payments. The agreement did not list the $3,404.16 debt, referred to above. Paragraph 5 of the agreement provides, in part, that one of the corporations, the W. E. Cotleur Construction Company, "hereby assigns to Allan Hull as security for all of the above fees due, and for the amounts still due and to become due upon all of the above mentioned note obligations, *83 the interest of the W. E. Cotleur Construction Company in the judgment against the Village of Parkview, Ohio, in Case No. 744,177 in the Court of Common Pleas, Cuyahoga County, Ohio. Allan Hull hereby waives his right to extra 4 fees, in addition to his retainer for ordinary services for handling this litigation." In 1967, petitioner received a payment in the amount of $34,984.80 upon the judgment referred to in the immediately preceding paragraph but reported only $29,944.80 of this amount as taxable income in the 1967 income tax return. The accountant preparing the 1967 return allocated the difference of $5,040 to another debt of Cotleur's which petitioner now admits was no longer outstanding. In the notice of deficiency, respondent determined that "the sum of $5,040.00 received by you during the taxable year 1967 was legal fees and is taxable as ordinary income." In the pleadings and opening statement, petitioner concedes that he is taxable on an additional $1,635.84 of the $34,984.80 collection, but alleges that $3,404.16 represents a recovery of the $3,404.16 loan made to Cotleur on March 25, 1959. Issue 2. Casualty Loss Item In 1949, petitioners purchased 13-1/2 acres *84 of rural land in Chesterland, Ohio, for $11,250 and, later, an additional 1-1/2 acres for $1,500. Shortly after the second acquisition, petitioners added improvements, including a driveway, a pond, a water well system, and a septic tank in 5 connection with a cottage located on the property. The cost of these improvements was approximately $5,000. In about 1953, petitioners built a home on the property at a cost of about $34,000. The house is one-story with rustic wooden siding. Petitioners added further improvements costing about $5,000 at a later unspecified date. The tract of land is located on a hill with deep gullies on two sides, a heavily forested area on one side, and open fields on the other. To the north is Little Mountain. The tract provides a 7-mile view to the mountain, together with complete isolation from other houses. Near the top of the hill is an artesian spring which feeds the pond. In 1969, many of the trees were very old, and there was no evidence that the area in which they were located had ever been cut over. On July 4, 1969, an extensive storm occurred in the Cleveland area. While petitioners' house was not damaged, approximately 44 trees *85 on their property were destroyed, and many others were broken off or otherwise damaged. Although trees were blown down or damaged all over the property, the worst damage occurred in a virgin-timber area located in the northwest corner of the tract. So many of these trees were blown over that it was difficult to walk through this area. Near the house three 50-foot blue spruce trees were topped, 6 a 300-year-old maple tree was split in two, and other specimen trees were destroyed or damaged. In their income tax return for 1969, petitioners claimed a casualty loss deduction of $17,200 for the trees. In the notice of deficiency, a casualty loss deduction of $4,600, less the $100 exclusion, was allowed. The remainder of the claimed deduction was disallowed. OPINION Issue 1. Income Allegedly Unreported Petitioner is correct, of course, in his basic premise that reimbursement of advances, such as the $3,404.16 debt, is not taxable income. The preponderance of the evidence also supports petitioner's position that Cotleur owed him the $3,404.16 debt as a result of petitioner's discharge of the note to Guardian Commercial Service, Inc., in 1959. He is also correct in his *86 legal position that, even though the collection of that debt may have been barred by limitations, the liability was not extinguished; only the remedy for enforcement of the claim was impaired by the running of the statute. 7 However, the agreement of July 28, 1966, [1] assigning the interest of the W.E. Cotleur Construction Company under of Parkview, Ohio, judgment as security for the payment of the fees and notes therein described, does not mention the old $3,404.16 subrogated debt. Absent this agreement, petitioner might have been free to decide how he would apply the collections under the assigned judgment. But we think this agreement prevented him from allocating $3,404.16 of the $34,984.80 collection in 1967 to the old debt resulting from petitioner's guaranty payment to Guardian Commercial Service, Inc. There is no evidence of Cotleur's consent to such a modification of the July 28, 1966, agreement, and the manner in which the collection was applied could have substantially affected the rights of the parties with respect to the old subrogated debt as well as the debts enumerated in the agreement in terms of interest, statute of limitations, and the like. Accordingly, *87 we must sustain respondent's position on this issue. 8 Issue 2. Casualty Loss Item Under section 165(a) of the Internal Revenue Code of 1954, as in effect in 1969 and as modified by Code section 165(c) (3), petitioners are entitled to deduct the loss attributable to the storm damage to their property. The measure of the deduction is the fair market value before the damage less the fair market value after the storm, subject to the statutory $100 limitation and the proviso that the deduction may not exceed petitioners' adjusted basis for the property. Sec. 1.165-7(a) and (b), Income Tax Regs. Trees are treated as an integral part of property, and no separate basis is allocated to them; the loss is the decrease in the value of the overall residential property. See Western Products Co., 28 T.C. 1196, 1218-1219 (1957). To assist us in finding *88 the amount of the loss, we have the testimony of one expert for petitioners and two experts for respondent, all of whom have taken widely differing approaches. In addition, petitioner testified at length as to his opinion of the value of the property, the extensiveness of the loss, the cost of cleaning up the debris, and other factors. 9 On consideration of all the evidence, we find the loss to be $9,000. While this figure is considerably less then the amount claimed by petitioners and more than the amount allowed by respondent, it represents our best judgment, in the light of the entire record, as to the amount of the loss. To reflect the foregoing conclusions, Decision will be entered under Rule 50. Footnotes
1. As petitioner characterized the assignment in the petition, the "proceeds of a pending lawsuit would be used to discharge all outstanding debts owed and not previously repaid, and the balance was to be utilized to discharge * * * long standing obligations of Cotleur for legal services." ↩