Wisconsin Securities Company of Delaware v. Commissioner.
Wisconsin Sec. Co. v. Commissioner
Docket No. 83946.
United States Tax Court
T.C. Memo 1962-107; 1962 Tax Ct. Memo LEXIS 201; 21 T.C.M. (CCH) 588; T.C.M. (RIA) 62107; May 2, 1962
George M. Chester, Esq., 735 N. Water St., Milwaukee, Wis., and James P. Brody, Esq., for the petitioner Julian R. Ettelson, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the petitioner's income tax for the years 1955, 1956 and 1957 in the respective amounts of $8,468.75, $4,991.22 and $30,872.36. The issue is whether petitioner is entitled to a business bad debt deduction in 1957 due to the worthlessness of a purported loan of $50,000 (plus accrued but unpaid interest of $3,500) made by it to *202 The Pusey and Jones Corporation. The years 1955 and 1956 are here involved only because of net operating loss carryback to those years from 1957. Findings of Fact Some of the facts have been stipulated and they are herein included by this reference. Wisconsin Securities Company of Delaware, hereinafter sometimes called the petitioner, is a corporation organized on December 29, 1937 under the laws of the State of Delaware. Petitioner's principal office is in Wilmington, Delaware, and its main operating office outside the State of Delaware is in Milwaukee, Wisconsin. Petitioner filed its corporate income tax returns for the years 1955, 1956 and 1957 with the district director of internal revenue at Wilmington, Delaware. During the years 1955, 1956 and 1957 the petitioner qualified as a personal holding company under section 542(a) of the Internal Revenue Code of 1954. [1] Petitioner accounts for and reports its income on an accrual basis. Since its organization the petitioner has been primarily engaged in investing in the stock of other corporations *203 and in furnishing management and advice to said corporations. During the years 1955, 1956 and 1957 the principal investments held by petitioner were 70,000 shares of the common stock of Wisconsin Bankshares Corporation, a Wisconsin bank holding company, and 95,000 shares of common stock of Aquaterra Company, a Delaware corporation, sometimes hereinafter called Aquaterra. The market value of each investment was approximately $1,500,000. Petitioner's 95,000 shares of Aquaterra represented 61.29 percent of Aquaterra's outstanding common stock. The remaining 38.71 percent of Aquaterra's outstanding stock was owned by about 140 other stockholders, some of whom also held stock in petitioner. During the years 1955, 1956 and through most of 1957 Aquaterra owned all of the outstanding stock of The Pusey and Jones Corporation, a Delaware corporation, sometimes hereinafter called Pusey and Jones, which ownership consisted of 7,500 shares of no par value common stock and 7,500 shares of no par value $7 cumulative participating preferred stock. All of this stock was acquired by Aquaterra in 1927 for approximately $600,000. Aquaterra also owned all of the stock of several marine towing companies *204 and about 30 percent of the outstanding stock of a corporation producing large cylinder rolls for companies engaged in the manufacture of paper-making machinery. For many years up through the period here involved Pusey and Jones was primarily a manufacturer of paper-making machines and heavy steel fabrications. During World War II, Pusey and Jones built ocean-going freight vessels for the United States Maritime Commission. Following World War II, Pusey and Jones found it increasingly difficult to compete with other manufacturers. Pusey and Jones sustained losses from its operations for each of the years 1951 through 1956. Its losses for these years, as shown by stipulated financial statements, were as follows: Year
Amount
1951
[ 71,141.37)
1952
( 95,707.87)
1953
( 374,447.46)
1954
(1,826,421.00)
1955 *
(1,095,172.04)
1956
( 856,727.85)
In 1956 a major rebuilding and reconditioning program was begun in the Pusey and Jones plant. For the period January 1, 1957 through *205 July 28, 1957 Pusey and Jones had a profit from operations of $145,403.27. During the years 1952 through 1957 most of the officers of petitioner were also officers of Aquaterra, and during this same period at least a majority of the board of directors of petitioner and Aquaterra consisted of the same persons. During this same period petitioner and Aquaterra shared a business office in the Pusey and Jones plant. Petitioner provided advice and management to Pusey and Jones. On December 31, 1951 Pusey and Jones had outstanding notes payable to a bank in the amount of $1,000,000, and the loan agreement provided (1) that no further obligations for money borrowed were to be incurred by Pusey and Jones without the bank's consent and (2) that the borrowings under the loan agreement would become due and payable if Aquaterra ceased to own the majority of the capital stock of Pusey and Jones. On December 31, 1952 the notes payable to banks had increased to $2,400,000. Pursuant to a resolution of its board of directors adopted September 30, 1952 the petitioner advanced to Pusey and Jones the sum of $50,000 and received in exchange a demand note for $50,000, bearing interest at the rate of *206 4 percent per annum and dated November 14, 1952. The transaction was recorded as a demand loan on petitioner's books and the audited financial statement of Pusey and Jones for the year ended December 31, 1952 records the liability as a demand note payable to an affiliated company. Interest was paid on this note throughout the period it was outstanding. On July 29, 1953 petitioner exchanged the demand note dated November 14, 1952 for a new note in the principal amount of $50,000 dated July 29, 1953 and due on January 29, 1955, with interest payable semi-annually at the rate of 4 percent per annum. The transaction was recorded as a substitution of a term loan for a demand loan on petitioner's books, and the audited financial statement of Pusey and Jones for the period ended December 31, 1953 records the liability as a non-current note payable to an affiliated company in 1955. Interest was paid on this note throughout the period it was outstanding. Pursuant to a resolution of its board of directors on September 30, 1952 Aquaterra advanced $50,000 to Pusey and Jones in exchange for its 4 percent demand note dated November 14, 1952 in the principal sum of $50,000. On October 15, 1953 Aquaterra *207 accepted from Pusey and Jones a 4 percent note for $50,000 payable April 15, 1955 in exchange for said demand note. On March 31, 1954 Aquaterra advanced $200,000 to Pusey and Jones in exchange for its 4 percent promissory note for $200,000 payable September 30, 1955. Pursuant to a resolution of its board of directors on April 12, 1954 Aquaterra advanced $350,000 to Pusey and Jones in exchange for its 4 percent promissory note for $350,000 payable April 21, 1956. Pursuant to a resolution of its board of directors on July 15, 1954 Aquaterra advanced $250,000 to Pusey and Jones in exchange for its 3 1/2 percent promissory note for $250,000 payable December 30, 1954, secured by an assignment of payments due or to become due to Pusey and Jones under a specific contract. Aquaterra borrowed $250,000 from the Wilmington Trust Company to have funds with which to make this loan to Pusey and Jones. This note was paid in due course by means of said contract payments. On October 4, 1954 a temporary committee of three directors, each of whom was a director of both petitioner and Aquaterra, was appointed at a meeting of the board of directors of Aquaterra to make an investigation of and to report *208 to the board concerning the financial affairs and prospects for future business of Pusey and Jones. On November 16, 1954 a report was presented to the board stating, in part, that "it appears certain that [Pusey and Jones] cannot continue with its present capital structure" and that at least two alternatives were open to the stockholders: (1) continue operations under the existing corporate set-up after providing necessary additional long-term or permanent capital of at least $1,500,000, or (2) liquidate the corporation. It was further pointed out in the report that in the event of immediate liquidation, "the owners would suffer full loss of their investment in stock and notes of Pusey." On December 17, 1954 Pusey and Jones, Wilmington Trust Company, The National City Bank of New York, Aquaterra, and the petitioner executed an agreement which stated, in part, as follows: WHEREAS, Pusey and Jones is presently indebted to the other parties to this agreement for loans which are evidenced by the following promissory notes: Payee
Amount
Date of Note
Maturity Date
Wilmington Trust
$1,000,000
June 30, 1954
Demand
Wilmington Trust
1,000,000
July 19, 1954
Demand
National City Bank
350,000
Aug. 9, 1954
Demand
Aquaterra
50,000
Oct. 15, 1953
Apr. 15, 1955
Aquaterra
200,000
Mar. 31, 1954
Sept. 30, 1955
Aquaterra
350,000
Apr. 21, 1954
Apr. 21, 1956
Aquaterra
250,000
July 15, 1954
Dec. 30, 1954
Wisconsin Securities
50,000
July 29, 1954 [2]
Jan. 29, 1955
*209 WHEREAS Pusey and Jones requires at this time $950,000 additional funds for current working capital purposes; and WHEREAS Aquaterra owns all of the stock of Pusey and Jones and Wisconsin Securities owns the majority of the stock of Aquaterra and, to induce Wilmington Trust and National City Bank to lend Pusey and Jones $350,000, Aquaterra is willing to lend $600,000 and Aquaterra and Wisconsin Securities are willing to subordinate all of their claims against Pusey and Jones, except the note of Pusey and Jones to Aquaterra dated July 15, 1954; and WHEREAS Wilmington Trust, National City Bank and Aquaterra are willing to lend Pusey and Jones sums aggregating $950,000 upon the terms hereinafter set forth, IT IS, THEREFORE, AGREED: 1. New Loans - Subject to the terms and conditions stated herein, Wilmington Trust will lend to Pusey and Jones $300,000, National City Bank will lend $50,000 and Aquaterra will lend $600,000 to be evidenced by promissory notes of Pusey and Jones * * *. Under the December 17, 1954 agreement petitioner accepted from Pusey and Jones a 4 percent unsecured demand note dated December 17, 1954 in *210 exchange for the unsecured $50,000 note dated July 29, 1953 which was due to mature January 29, 1955. The transaction was recorded as a substitution of a demand loan for a term loan on the petitioner's books. Interest was paid on the new note until March 31, 1955 but not thereafter. Under the December 17, 1954 agreement the new note was assigned to Wilmington Trust Company as collateral security for the indebtedness of Pusey and Jones to Wilmington Trust Company and The National City Bank of New York. Repeated efforts were made in years prior to 1957 to sell Pusey and Jones. During 1956 an investment group made a proposal to Aquaterra to purchase Pusey and Jones and the investment group agreed to assume all of the liabilities of Pusey and Jones. Early in 1957 the offer to purchase was withdrawn. On April 17, 1957 at a sepcial meeting of the board of directors of petitioner the following resolutions were adopted: "RESOLVED, that all interest accrued on the $50,000 note owed to Wisconsin Securities Company of Delaware by The Pusey and Jones Corporation be written off on the books of the Company. "FURTHER RESOLVED, that the action taken by the officers of the Company in agreeing *211 to surrender the said $50,000 note, together with interest, to Wilmington Trust Company in consideration of Wilmington Trust Company exerting its best efforts to obtain new equity financing for The Pusey and Jones Corporation, be, and the same hereby is, ratified, approved and confirmed." This particular offer by petitioner to surrender the $50,000 note of Pusey and Jones to Wilmington Trust Company was not acted upon by Wilmington Trust Company. On July 17, 1957 a group of investors headed by Joseph B. Ulicny made a proposal to purchase Pusey and Jones from Aquaterra. On September 9, 1957 petitioner's board of directors held a special meeting and the minutes of the meeting show the following: "The affairs of the Company were discussed, including the counterproposals made by the Ulicny Group for the reorganization of The Pusey and Jones Corporation. The action taken by the Board of Directors of Aquaterra Company in accepting said counterproposals at the meeting immediately preceding was approved. (Mr. Luhman asked to be recorded in the negative.) "The President reviewed the status of the $50,000 note of The Pusey and Jones Corporation to the Company which had been assigned *212 to the banks as collateral security, for the borrowings from such banks by Pusey and Jones. He stated that although this note had been fully reserved against as a matter of conservative accounting practice, all negotiations for the sale of Pusey and Jones until the spring of 1957 had been on the basis that Wisconsin Securities Company of Delaware would collect in full on this obligation, including accrued interest. He added that in an exchange of correspondence with Wilmington Trust Company in March of 1957 it had been determined by the officers of the Company that the enforced payment or retention of this obligation was not in the best interests of the Company, and this action by the officers was approved by the Board on April 17, 1957. Inasmuch as the current proposal for the sale and reorganization of Pusey and Jones called for the cancellation of said $50,000 note, and interest thereon, the President recommended that said obligation be written off as a bad debt at this time. The following resolutions were unanimously adopted at said meeting: "RESOLVED, that the $50,000 note payable to Wisconsin Securities Company of Delaware by The Pusey and Jones Corporation be written off *213 on the books of the Company as a bad debt effective this date by a charge against the related reserve of $49,999 and a charge to bad debts of $1.00. "FURTHER RESOLVED, that no interest income be accrued on the aforementioned obligation from January 1, 1957 and that any such accrual be reversed on the books of the Company and that all interest accrued to December 31, 1956 be written off against earnings on the books of the Company, and that the action of the Board in this respect taken April 17, 1957, be and it hereby is, reaffirmed." On September 9, 1957 the $50,000 note of Pusey and Jones dated December 17, 1954 was written off on the petitioner's books. The sale by Aquaterra of all voting stock of Pusey and Jones to the Ulicny group and the recapitalization of Pusey and Jones occurred on October 2, 1957, and on that date an agreement was executed by petitioner, Pusey and Jones, Wilmington Trust Company, The First National City Bank of New York, Aquaterra, and the Ulicny group. Under the terms of this agreement the Ulicny group advanced $500,000 in loans to Pusey and Jones, and in consideration of such loans Pusey and Jones amended its certificate of incorporation to provide *214 for the issuance of 5,650 shares of new Class B, no par value, preferred stock. The original 7,500 shares of no par value preferred were redesignated as Class A preferred. Aquaterra subscribed to the entire 5,650 shares of new Class B preferred paying $500,000 in cash for 5,000 shares and exchanging 375 shares Class A preferred for the remaining 650 shares of Class B preferred. The remaining 7,125 shares of Class A preferred and the entire 7,500 shares of common were transferred by Aquaterra to the Ulicny group for $100. The agreement also required that Wilmington Trust Company endorse without recourse and deliver to Aquaterra the promissory note of Pusey and Jones payable to Aquaterra in the total sum of $1,200,000 and the promissory note of Pusey and Jones payable to petitioner in the principal sum of $50,000. Petitioner agreed to waive, release and relinquish all of its interests in and to its $50,000 note. Aquaterra agreed to surrender to Pusey and Jones for cancellation all of said notes in the principal amount of $1,250,000, including all interest accrued thereon, as a capital contribution by Aquaterra. In the explanatory notes accompanying the financial statements of Pusey *215 and Jones for the period from January 1 to July 28, 1957, it was stated that the "notes payable to Aquaterra Company and [petitioner] in the principal amounts of $1,200,000.00 and $50,000.00, respectively, together with accrued interest thereon aggregating $87,500.04, were surrendered to the corporation for cancellation and the sum of the principal and interest, $1,337,500.04, was credited to donated surplus." Pusey and Jones was adjudicated a bankrupt in January 1960 and at that time the land, plant and building were sold for less than $1,000,000. Petitioner claimed a bad debt deduction of $53,500 (face amount of note plus interest) in its corporation income tax return for 1957 due to the purported worthlessness in that year of the $50,000 note. Respondent disallowed this deduction with the explanation that petitioner "failed to substantiate that the note from the Pusey and Jones Corporation was worthless in the taxable year ended December 31, 1957 and that the deduction is otherwise allowable within the provisions of Chapter I, Subchapter B of the Internal Revenue Code of 1954." Opinion Petitioner had the burden of proving its $50,000 advancement to Pusey and Jones was *216 an indebtedness rather than a capital contribution, as respondent determined, and that said indebtedness became worthless in the year 1957 when it took a bad debt deduction for $50,000, plus $3,500 unpaid interest. On the basis of the record we would be inclined to agree with the petitioner that there is much support for its first contention that the $50,000 advancement was a loan and not a contribution to capital. We can pass the issue, however, for assuming the advancement was a loan, we feel the record would not support a conclusion that it became worthless in 1957. To be entitled to a bad debt deduction in 1957 under the provisions of section 166, the petitioner must establish it had "value at the beginning of the year and thereafter during the year something must occur which renders the indebtedness destitute of value." Western Products Co., 28 T.C. 1196, at 1221, 122. Petitioner argues it establishes the value at the beginning of the year by the 1956 proposal to purchase Pusey and Jones under which petitioner's debt would be assumed by the purchaser. Petitioner seems to rely almost completely upon the following events in 1957 to show that its indebtedness became *217 worthless in that year: (1) the proposal in 1956 by an investment group to purchase Pusey and Jones and assume all of its liabilities was withdrawn early in 1957; (2) the inability of the Wilmington Trust Company to find a buyer in 1957 who would assume all of the liabilities of Pusey and Jones; and (3) the sale of Pusey and Jones in 1957 to the Ulicny group, which required as one of the conditions of the sale that the note be canceled. As petitioner sums it up in its brief, "[in] the instant case, we are fortunate to have an evaluation of the worth of the debt by outside sources. These outside sources were willing to assume the debt in 1956, but were no longer willing to assume it in 1957." The unexplained willingness or unwillingness of the purchasers of Pusey and Jones to assume a $50,000 obligation to petitioner is not much indication of the note's worthlessness. The record shows that the $50,000 debt was the subject of bargaining between the buyer and the seller of Pusey and Jones. One might conclude it was not considered a worthless liability in 1957 by the purchaser who insisted on its cancellation. It other words, the alleged event could just as plausibly be said to indicate *218 value as well as worthlessness. As far as we can tell from the record the dominant reason for petitioner's failure to enforce payment of this note in 1957 and in prior years was not that the note was worthless and uncollectible but because it would not be in the best interest of Pusey and Jones to enforce payment, and the petitioner, through its approximately 61 percent ownership of Aquaterra's common stock, was obviously concerned with the successful operation of Pusey and Jones. In fact, after several years of mounting losses, Pusey and Jones showed a profit from operations of $145,403.27 for the period January 1, 1957 through July 28, 1957. Petitioner is arguing the debt made in 1952 became worthless in the very first year thereafter that the debtor corporation showed a profit. [3] It may also be reasonably inferred from the record that the petitioner's anxiety to conclude the sale of Pusey and Jones by Aquaterra to the investment group was also a motivation for the cancellation of $50,000 indebtedness. *219 Nor is there anything in the financial statements of Pusey and Jones to support a claim for the note's worthlessness in 1957. The corporation's balance sheet as of July 28, 1957 shows total assets of $5,147,210.45, total current liabilities of $7,714,606.29, capital stock of $1,129,603.93 and a deficit of $3,862,999.77. This state of affairs, however, was not unique in 1957, since the balance sheets of Pusey and Jones show an excess of liabilities over assets, as well as a deficit, as of December 31, 1955 and 1956. Therefore, any argument that the note was worthless in 1957 because of the financial weakness of Pusey and Jones in that year would apply with equal force to the years 1955 and 1956. We hold that petitioner has not met its burden of showing that the indebtedness became worthless in 1957. We sustain the respondent on this issue. Decision will be entered for the respondent. Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
*. Outstanding special item of $562,300.50 (which would increase the amount of the loss) representing adjustments incident to settlement of disputed contracts completed in a prior year.↩
2. Date as shown is incorrect. Correct date is July 29, 1953.↩
3. It is significant that in October 1957 when the investment group purchased from Aquaterra all the voting stock of Pusey and Jones, Aquaterra (and therefore petitioner) was by no means unconcerned with the future of Pusey and Jones, since under the recapitalization that took place at the time of the sale in 1957, Aquaterra acquired the entire issue of 5,650 shares of new Class B preferred stock of Pusey and Jones for $500,000 in cash and the exchange of certain shares of stock.↩