John A. Babett and Marylouise H. Babett v. Commissioner.
Babett v. Commissioner
Docket No. 2886-64.
United States Tax Court
T.C. Memo 1966-124; 1966 Tax Ct. Memo LEXIS 161; 25 T.C.M. (CCH) 637; T.C.M. (RIA) 66124; June 8, 1966
Aubrey B. Lank, 1118 Wilmington Bldg., Wilmington, Del., for the petitioners. Samuel T. Reiner, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency of $917.99 in petitioners' income taxes for the year 1961. The only issue concerns the amount of a casualty loss suffered by petitioners. Findings of Fact Petitioners, husband and wife residing in Wilmington, Delaware, filed their joint Federal income tax return for the year 1961 with the district director of internal revenue, Wilmington, Delaware. On April 2, 1960, petitioners purchased, for $45,000, certain real estate situated at 103 East Pembrey Drive, Wilmington, Delaware. The property purchased consisted of a two-story frame and stone single family residence on a one-acre (43,648-square-foot) *162 lot with a 130-foot frontage on East Pembrey Drive. Petitioners occupied the property as their residence. At the date of purchase, the property was nicely landscaped with 155 English boxwood plantings, more than 25 trees of various types, a formal flower garden, a rose garden, and some shrubbery. The flagstone walk at the front of petitioners' house was lined with boxwood, as was the formal garden to the rear of the house. There was also a row of boxwood bordering a rose garden in a rear corner of the lot. The boxwood on petitioners' property stood between 15 and 30 inches high. It takes about 20 to 25 years for English boxwood to grow to a height of 30 inches. On January 19 and 20, 1961, 10.9 inches of heavy wet snow fell in the Wilmington area. This snowfall was followed by about two weeks of extremely cold weather. As a result of the snow and cold weather, 131 of petitioners' 155 English boxwood suffered varying degrees of injury, injury which was immediately evident. Many of the boxwood were broken and completely or partially killed. The leaves of those plants which were killed turned white, and portions of the plants were completely denuded of foliage. The damage inflicted *163 by the snow and cold caused the boxwood to become quite unsightly, so much so that the over-all appearance of petitioners' property was significantly worsened. Petitioners' subsequent efforts to restore the plants proved largely unsuccessful. On their 1961 income tax return, petitioners claimed a casualty loss deduction of $2,700 with respect to the damage suffered by the English boxwood. The amount of the deduction was based upon an estimate petitioners were given in February or March 1962 of the at-nursery cost of replacing the damaged boxwood. It would have cost an additional $1,000 to $2,000 for petitioners to have had the boxwood removed from the nursery and planted on their property. In his statutory notice of deficiency, respondent completely disallowed the casualty loss deduction claimed by petitioners for the damaged boxwood. Immediately prior to the snowfall of January 19-20, 1961, the fair market value of petitioners' property was $45,000. Immediately after the cold weather spell which followed the snow storm, the fair market value of the property was $43,000. Opinion The only issue to be decided is the amount of the casualty loss deduction allowable to petitioners *164 under section 165 [1] of the 1954 Code on account of the damage inflicted by the storm upon their English boxwood plantings. Petitioners deducted $2,700 on their 1961 return, but now claim the loss was $4,500. Respondent concedes the occurrence of an allowable casualty loss, but he maintains that petitioners have not proven their right to deduct more than $1,000. The parties are agreed that the amount of the loss is determined by the difference between the fair market value of the property immediately before and immediately after the casualty. See section 1.165-7(b)(1), Income Tax Regs. They are further agreed that the boxwood is to be considered as an integral part of the real estate *165 as a whole, and not valued separately. See Western Products Co., 28 T.C. 1196, 1218-19 (1957); section 1.165-7(b)(2)(ii), Income Tax Regs. The area of their disagreement is limited to the important facts of fair market value before and after the casualty. Petitioners must, of course, bear the burden of proving the values they rely upon. We have found as fact that the fair market value of the property before the loss was $45,000 and the fair market value after the loss was $43,000. These findings fix the amount of the loss at $2,000, and petitioners are entitled to a deduction in that amount. Little would be gained by a detailed discussion of the evidence. We will, however, attempt to summarize some of the factors which influenced our findings. As to the fair market value before the loss, the strongest evidence presented was the price paid by petitioners some 10 months before the loss. One of the petitioners, John A. Babett, testified that he thought he had paid a fair price for the property, and the record discloses no evidence, other than the storm, which would account for any significant change in value over the 10-month period involved. *166 We have given no weight to the opinion of petitioners' appraisal witness, James A. Nutall, that the property had a value of $47,500 before the loss, since Nutall did not explain the difference between his estimated value as of that time and the cost of the property to petitioners. In determining the value after the loss, we considered the opinions of the two expert witnesses and also the evidence about the estimated replacement cost of the English boxwood. Some doubt was cast on Nutall's opinion of the property's value after the loss because of the unreliability of his opinion of value before the loss. However, his opinion, based upon an appraisal of the property, does not appear to be unreasonable and is entitled to some weight. Respondent's expert, Joe T. Gilbert, also left us with something less than complete confidence in his opinion, because of his unfamiliarity with the Wilmington area coupled with his failure to use comparable sales to establish the fair market value of petitioners' house (as opposed to the land value, for which he did use comparable sales data). Finally, we gave some secondary weight to the estimated replacement cost of the damaged boxwood. Since boxwood *167 is a small plant, and since petitioners' boxwood formed an important facet of the landscaping of the property involved, we believe replacement cost is entitled to more weight here than if a large tree, unlikely to be replaced and relatively unimportant to the landscaping, had been damaged. Even so, we have utilized this factor as little more than a makeweight. We have done our best to evaluate the conflicting evidence presented; the weight given to the various factors discussed above is reflected in our findings with respect to the fair market values at the pertinent times. There is no benefit to be gained by discussion of the many cases cited, each having been decided on its own facts. Decision will be entered under Rule 50. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩