THOMAS R. BOWERS and THERESA R. BOWERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowers v. Commissioner
Docket No. 14562-79.
United States Tax Court
T.C. Memo 1981-658; 1981 Tax Ct. Memo LEXIS 86; 42 T.C.M. (CCH) 1659; T.C.M. (RIA) 81658; November 12, 1981. Jerry Williams, for the petitioners. Diane Lynn Fox, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $ 7,945.08 in petitioners' Federal income tax for 1976. The only issue presented is whether petitioners suffered a deductible casualty loss when a tornado destroyed some trees on petitioners' property. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Thomas R. Bowers and Theresa R. Bowers, resided in Indiana when they filed their petition in this case. During 1976, petitioners and their three children resided at Rural Route 1, Lebanon, Ind. Their residential *87 property consisted of approximately 14 acres, a log house, and several outbuildings. Of the 14 acres, approximately 10 consisted of unimproved woodland and approximately 4 constituted the actual homesite. Petitioners' basis in the improved property on June 29, 1976, was $ 64,264.87. On June 29, 1976, a tornado touched down on petitioners' property damaging the log house and outbuildings and destroying twelve trees. [1] Of the twelve trees destroyed, seven were located near the house and outbuildings. A few days after the tornado, petitioners contacted Neil Engledow (Engledow) to obtain an appraisal of any loss resulting from the destruction of the trees. Engledow is president of Mid-Western Tree Experts, Inc., and a professional arborist who has appraised trees *88 for over twenty years. Engledow visited petitioners' property and inspected the remains of the twelve destroyed trees. His report, dated July 27, 1976, analyzed each lost tree separately. The loss in value of each tree was calculated by assigning a basic value to the tree based on its size and adjusting that value to take into account the tree's species, condition, and location. The resultant figure was the loss in value of that tree, since each tree was totally destroyed. Engledow charted his findings as follows: Species
Diameter
Species Value
and
of Trunk
in
Variety
in Inches
Dollars
American Beech
32"
$ 6,434.00
White Oak
48"
18,096.00
American Beech
39"
9,557.00
Sugar Maple
35"
9,621.00
American Beech
32"
6,434.00
Red Oak
44"
12,164.00
Sugar Maple
26"
5,309.00
Black Cherry
24"
905.00
Sugar Maple
25"
4,909.00
Sugar Maple
31"
7,548.00
American Beech
36"
8,143.00
Red Oak
32"
6,434.00
Species
Amount
and
Condition
Location
of
Loss
Variety
Value
Class
Damage
Value
American Beech
80%
80%
100%
$ 4,117.76
White Oak
70%
60%
100%
7,600.32
American Beech
50%
80%
100%
3,822.80
Sugar Maple
60%
50%
100%
2,886.30
American Beech
60%
20%
100%
772.08
Red Oak
80%
80%
100%
7,784.96
Sugar Maple
70%
20%
100%
743.26
Black Cherry
60%
20%
100%
108.60
Sugar Maple
80%
80%
100%
3,141.76
Sugar Maple
80%
50%
100%
3,019.20
American Beech
50%
50%
100%
2,035.75
Red Oak
70%
30%
100%
1,351.14
*89 The first seven trees listed in the chart above are those which were located near petitioners' house and outbuildings. In his report, Engledow advised petitioners to obtain a separate real estate appraisal for income tax purposes, since his report concentrated on individual trees rather than on any diminution in the fair market value of petitioners' property as a whole. Accordingly, petitioners contacted Franklin Wakefield (Wakefield), a local real estate appraiser, to get such an appraisal. During November 1976, Wakefield and George Anderson, a licensed real estate broker, inspected petitioners' property. In his report dated December 27, 1976, Wakefield concluded that the destruction of the trees resulted in a $ 28,000 ($ 2,000/acre) reduction in the fair market value of petitioners' property. [2] He valued petitioners' property after the tornado at $ 85,800 broken down as follows: 14.3 acres at $ 3,500/acre
$ 50,050
Improvements
31,750
Water pond
4,000
$ 85,800
On September 3, 1980, Mervyn Posner (Posner), an independent real estate appraiser employed by respondent, examined petitioners' property. *90 In his report dated September 5, 1980, he concluded that the fair market value of petitioners' property during June 1976, both before and after the tornado, was $ 66,000. Thus, he concluded that the destruction of the trees caused no diminution in the property's value. In making his appraisal, Posner used both the cost approach and the market data approach. The cost approach resulted in a value slightly exceeding $ 67,000 broken down as follows: 14.26 acres at $ 2,500/acre
$ 35,650.00
Improvements
31,485.00
The market value approach resulted in a value of $ 66,000 and was not broken down. In his report, Posner found residential sites represented the highest and best use for petitioners' property, since the land was wooded and nontillable and "wooded tracts tend to bring a higher price than open tillable land, as many homeowners enjoy the woodland type atmosphere." On their Federal income tax return for 1976, petitioners claimed a casualty loss deduction of $ 27,900 under section 165(c)(3) [3] as their loss resulting from the destruction of the twelve trees. In his statutory notice of deficiency, respondent disallowed that claimed deduction in its entirety. *91 ULTIMATE FINDINGS OF FACT The fair market value of petitioners' property decreased by $ 19,500 as a result of the destruction of the twelve trees. OPINION The only issue presented in this case is to what extent, if any, the destruction of twelve trees on petitioners' property reduced the value of that property. As a general rule, the amount allowable as a casualty loss deduction is the lesser of (1) the difference in the fair market value of the property immediately before the casualty and immediately thereafter, and (2) the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468 (1939); sec. 1.165-7(b)(1), Income Tax Regs. In this case, petitioners' adjusted basis in the property at the time of the casualty greatly exceeds any amount asserted by them as a casualty loss. Thus, the loss allowable herein is limited to the reduction in the value of petitioners' property caused by the destruction of the trees. The parties' respective positions are clear. Respondent, relying on Posner's report, contends that the loss of the trees did *92 not reduce the value of petitioners' property at all. Petitioners, relying on the reports of Wakefield and Engledow, maintain that their property decreased in value by $ 28,000 when the trees were destroyed. We are presented with a question of fact upon which the petitioners bear the burden of proof. Pfalzgraf v. Commissioner, 67 T.C. 784 (1977); Rule 142(a), Tax Court Rules of Practice and Procedure. Fair market values before and after a casualty "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. In this case, we were presented with three appraisals upon which to base our determination. Engledow, a highly qualified and extremely credible arborist, reported as to the actual loss in value of the trees themselves. At trial, Engledow carefully explained his calculations and the basis thereof. Respondent objects to Engledow's appraisal because it focuses on the individual trees rather than on any decrease in the overall value of petitioners' property caused by the destruction of the trees. While it is generally true that when a casualty loss has been sustained with respect to trees on residential property, the trees *93 are treated as part of the overall property, Western Products Co. v. Commissioner, 28 T.C. 1196, 1219 (1957); Buttram v. Jones, 87 F. Supp. 322 (W.D. Okla. 1943), that does not make Engledow's report entirely irrelevant. Contained within Engledow's report was a location factor assigned to each tree. At trial, Engledow explained that a higher location factor was assigned to those trees which had provided shading, noise abatement, or wind screening. Thus, we conclude that those trees with a high location factor, see chart at 3, supra, added measurable value to petitioners' property. Wakefield, a local real estate appraiser, reported that the trees' destruction reduced the fair market value of petitioners' property by $ 28,000 ($ 2,000/acre). While Wakefield's report is quite cursory, certain credence is lent it because Wakefield's inspection of petitioners' property occurred shortly after the tornado, and Wakefield was intimately familiar with the area. Posner reported that the fair market value of petitioners' property was $ 66,000 both before and after the tornado, and no decrease in value resulted from the trees' destruction. Posner's *94 report is quite detailed and convincing, and were it necessary to do so, we might well conclude that Posner came closer than Wakefield to reaching the fair market value of petitioners' property after the tornado. However, Posner's conclusion that the fair market value of petitioners' property before the tornado equalled the post tornado value seems to be based entirely on his conclusion that petitioners had so many trees that a loss of twelve caused no measurable harm. It is with that assumption, that we have difficulty. In summary, we are presented with three reports all of which were honestly made and tell us something, but none of which tell us everything. Certain factors have convinced us that a loss occurred. Seven of the subject trees were located near petitioners' house and outbuildings. Four of those seven trees were assigned high location values by Engledow; two were assigned medium location values; and one was assigned a low location value. It is clear that with respect to the four high location value trees, petitioners suffered a great loss and, with respect to the two medium location value trees, petitioners suffered some loss. With respect to the one tree near *95 the buildings which was assigned a low location value and the six trees located away from the buildings in wooded areas, we find no basis in the record upon which we can determine any loss. Given our certainty that some loss occurred, and petitioners' honest and diligent effort to show the amount of their loss, we find this an appropriate case in which to apply the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Based upon the evidence before us, we conclude that the destruction of the trees caused the fair market value of petitioners' property to decrease $ 19,500. Therefore, petitioners are entitled to a section 165(c)(3) deduction of $ 19,500, less the statutory $ 100 floor. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Petitioners were compensated by insurance for damage to the house and other buildings. Petitioners received $ 200 of insurance proceeds for damaged trees, but did not reduce their claimed casualty loss by such amount. Given the various possible explanations for such a reporting posture, and respondent's failure to raise clearly such issue before brief, we decline to give any consideration to the $ 200 amount.↩
2. George Anderson concurred in Wakefield's report.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩