JAY M. BEAMS AND JANIE L. BEAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beams v. Commissioner
Docket No. 17865-89
United States Tax Court
T.C. Memo 1994-301; 1994 Tax Ct. Memo LEXIS 304; 67 T.C.M. (CCH) 3152; June 29, 1994, Filed *304 Decision will be entered under Rule 155. For petitioners: Robert D. Harp and John L. Burghardt. For respondent: Bruce E. Gardner. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6659
Sec. 6621(c)
1979
$ 16,783
$ 839
$ 1,678
[2]
1980
5,087
254
398
[2]
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
Sec. 6621(c)
1982
$ 11,472
$ 574
[1]
$ 1,147
[2]
1983
28,045
1,402
[1]
1,092
[2]
1984
13,531
677
[1]
1,014
[2]
Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
Sec. 6659
1986
$ 9,615
$ 481
[1]
$ 2,884
After concessions, *305 the only issue remaining for decision is the amount of a casualty loss sustained by petitioners in 1983. Petitioners resided near Susanville, California, at the time they filed their petition. The stipulation of facts and attached exhibits are incorporated herein. Sometime prior to September of 1983, petitioners purchased 10.65 acres of real estate in a forested area near Susanville, California. For county assessment purposes these 10.65 acres consisted of four separate (but adjacent) parcels, designated as lots 28, 29, 30, and 31. Lot 30 contained a 3,768-square-foot custom home that was used as petitioners' residence. The other three parcels contained no improvements. On September 17, 1983, a forest fire swept through the Susanville, California, area. The fire did not damage petitioners' residence, but did destroy and damage pine and oak trees, shrubs, and grass on all four parcels. Many of the trees damaged were quite old and large. The oak trees that were burned have not regrown as before, but have generated oak bushes in their place. The pine trees that were burned have not regrown. Petitioners have not replanted any of the wild trees burned in the fire. Petitioners *306 had property insurance for lot 30, but not for the other lots. In cases of damage to trees and shrubs, petitioners' insurance policy limited their recovery to 5 percent of their total policy ($ 143,300), or $ 7,165. Mr. John E. Murray of Murray & Edwards Insurance Agency handled petitioners' claim. In estimating petitioners' loss for purposes of submitting the insurance claim, Mr. Murray visited a local nursery to obtain a rough value for the trees burned in the fire. He then visited petitioners' lot 30 and counted burned trees and vegetation until he reached a number (32 oak and 36 pine trees and 250 shrubs) with a cost sufficient to exceed petitioners' policy limits. At that point, Mr. Murray stopped counting. Petitioners also received an additional $ 375 for other fire damage, bringing their total insurance recovery to $ 7,540. Petitioners employed Mr. Charles W. Ryan of ryan/associates (real estate appraisers and consultants) to do an appraisal of their land in order to determine their loss. In a report dated January 5, 1984, Mr. Ryan estimated that petitioners' land diminished in value by $ 76,000 as a result of the fire. Petitioners used this appraisal as a basis for *307 the casualty loss deduction claimed on their 1983 return. Respondent disallowed this deduction in full. Section 165(a) [1] allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. For individuals, the deduction under section 165 is available only for certain types of losses, including those arising from fire. Sec. 165(c)(3). There is no dispute that fire caused the damage to petitioners' property. Petitioners contend that they are entitled to a casualty loss of $ 76,000 arising from the destruction or damage by fire of trees, shrubs, and grass on their property. Respondent contends that they are not entitled to any deduction. Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *308 In the case of any casualty loss, the amount of the loss to be taken into account is the lesser of (1) the difference between the fair market value of the property before the casualty and its fair market value after the casualty; or (2) the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468, 471 (1939); Lamphere v. Commissioner, 70 T.C. 391, 395 (1978); sec. 1.165-7(b), Income Tax Regs. At trial, respondent stipulated that the adjusted basis of the property equaled or exceeded $ 76,000 during the taxable year at issue. Trees and shrubs are to be treated as an integral part of residential real property, and no separate basis or determination of loss is allocated to them. The loss from damage to, or killing of, trees is the decrease in the value of the overall property. Western Prods. Co. v. Commissioner, 28 T.C. 1196, 1219 (1957); Cristo v. Commissioner, T.C. Memo. 1982-514; sec. 1.165-7(b)(2)(ii), Income Tax Regs.
Petitioners introduced the appraisal report of Mr. Ryan as evidence of the fair market value of their property both before and *309 after the fire. Petitioners argue (and the appraisal report concludes) that the destruction of trees, shrubs, and grass by the fire reduced the fair market value of their unimproved lots (31, 29, and 28) by a total of $ 20,000. We agree. Petitioners' property is in a heavily wooded area, and much of its value (especially on these unimproved lots) was due to this fact. The damage attributable to the fire was clearly substantial as evidenced by the photographs in the record. The destroyed trees and vegetation either have not returned or have sprouted as bushes that replaced little of the property's lost value. Respondent assails the appraisal report on several grounds including faulty assumptions, use of inadequate comparables, and failure to define certain terms. The appraisal report used both the cost and market approaches to determine the decrease in value. These are the methods sanctioned by respondent's own regulations. See sec. 1.165-7(a)(2), Income Tax Regs. With regard to the unimproved lots, the report is generally thorough and specific. It defines terms utilized, makes fairly conservative assumptions, and uses a wide array of comparables. We find the appraisal report *310 to be adequate evidence of the decrease in value of petitioners' unimproved lots. Petitioners also contend (and the appraisal report concluded) that the lot containing their residence (lot 30) decreased in value due by a total of $ 56,000. Petitioners attribute much of this purported decrease in value to the fact that petitioners' residence, without the cover of heavy forest nearby, is substantially overbuilt or "overimproved". Respondent argues that the loss allowed must be limited to the "actual loss" resulting from the damage to the property, see sec. 1.165-7(a)(2)(i), Income Tax Regs., and may not include "the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty", sec. 1.165-7(a)(2)(i), Income Tax Regs. Respondent contends that the loss estimated by Mr. Murray, petitioners' insurance agent, represents the actual loss sustained. Mr. Murray's estimate, according to his own testimony, was an unreliable indicator of petitioners' loss. The diminution in lot 30's value is attributable to both the lost trees and the overall reduction in the aesthetic value of lot 30 (including the residence) due to *311 the fire. From the photographs in evidence, it appears that the loss of trees near the house was quite heavy. The house now stands in a field, rather than a forest. On the other hand, we do not completely accept the amount of petitioners' asserted loss attributable to the residence that was not physically damaged. We find that $ 20,000 is a reasonable approximation of the loss sustained by petitioners on lot 30. Petitioners were reimbursed for only $ 7,540 of this loss. Respondent argues that, while petitioners' basis in the whole property equaled or exceeded the loss claimed, petitioners are required to prove that their basis in each separate lot was equal to or greater than the loss sustained on that lot. Respondent reasons that "the cost of each tract determines the basis for the parcel sold from that tract." We find respondent's argument unconvincing. Respondent stipulated at trial that petitioners' basis in their land equaled or exceeded $ 76,000. Respondent provides no evidence, and indeed, does not even assert, that petitioners bought, or will sell, their four lots separately. [2] From petitioners' testimony, the appraisal, and the testimony of Mr. Murray, all of which *312 we found credible, we find that petitioners' four lots constitute a single piece of property. Petitioners used the property for residential purposes and did not place dividers between the separate lots. The lots other than lot 30 were not improved and were characterized by respondent as "petitioners' private forest". We find that the property is an integrated whole and that petitioners are not required to prove the basis for each lot separately. To reflect the foregoing, Decision will be entered under Rule 155. *313 Footnotes
2. 120 percent of the interest payable under sec. 6601 with respect to the portion of the deficiency which results from the substantial underpayment of tax attributable to tax motivated transactions.↩
1. For returns required to be filed after Dec. 31, 1981, if the addition to tax under sec. 6653(a)(1) applies, the addition to tax under sec. 6653(a)(2) will also apply in an amount to be determined.↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The difficulty in finding comparable properties in the area was best surmounted by calculating petitioners' loss by looking at each lot separately. To the extent that separating the parcels for valuation purposes resulted in different values from what might result were they sold as one integrated piece, the results reached by the appraisal report took this into account by simply using each parcel's separate value consistently as a basis for both the before-fire and after-fire valuations.↩